BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE: INSULIN PRICING LITIGATION | § | MDL NO. _____ |

**BRIEF IN SUPPORT OF MOTION FOR TRANSFER OF
ACTIONS PURSUANT TO 28 U.S.C. § 1407**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, the States of Arkansas, Illinois, Kansas, Mississippi, and Montana respectfully submit this Brief in Support of their Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407. Movants request that this Panel transfer five federal actions filed by five States (the Scheduled Actions) to the Southern District of Mississippi for coordinated pretrial proceedings.[1]

The Scheduled Actions are pending in separate federal district courts in Arkansas, Kansas, Illinois, Mississippi, and Montana, but allege the same wrongful conduct, over the same period of time, on the part of the same defendants – Insulin Manufacturers[2] and Pharmacy

---

[1] Although not movants, the California Attorney General, the Louisiana Attorney General, and the Secretary of Justice of Puerto Rico filed suit on January 12, 2023, March 14, 2023, and January 17, 2023, respectively. Each of the cases has been removed to federal court. Remand motions are pending in the California and Puerto Rico actions.

[2] Insulin Manufacturers are Eli Lilly and Company, Sanofi-Aventis U.S. LLC, and Novo Nordisk Inc.

1

Benefit Managers (PBMs).[3] In total, the Scheduled Actions involve millions of diabetic consumers.

Transfer to and consolidation in the Southern District of Mississippi will promote the just and efficient conduct of these Actions by avoiding the potential for inconsistent pretrial rulings on discovery and substantive matters, duplicative fact and expert discovery, and the burden and inconvenience of litigating the same issues and producing dozens of the same witnesses and millions of documents in numerous individual cases in different judicial districts.

I.     **BACKGROUND**

    A. **Factual Background**

The Scheduled Actions involve the Insulin Pricing Scheme, a conspiracy to artificially inflate the price of insulin. Insulin Manufacturers dominate the diabetes drug market, manufacturing 99% of insulins. Insulin Manufacturers also, in coordination with PBMs, set the list price for their diabetes drugs. The list price is the basis for the price that nearly every consumer and payor pays for the at-issue drugs. PBMs control 80% of the market and manage the pharmacy benefits for the vast majority of Americans.

---

[3] There are three sets of PBMs: (a) Caremark, consisting of CVS Health Corporation, CVS Pharmacy, Inc., Caremark Rx LLC, CaremarkPCS Health LLC, and Caremark LLC; (b) Express Scripts, consisting of Evernorth Health Inc., Express Scripts Inc., Express Scripts Administrators, LLC, ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy Inc., and Medco Health Solutions Inc.; and (c) OptumRx, consisting of UnitedHealth Group, Inc., Optum Inc., OptumInsight Inc., OptumRx Holdings LLC, and OptumRx Inc. As reflected in the Schedule of Actions, all three PBMs are defendants in all of the Scheduled Actions, but not all of their constituent affiliates remain as defendants in all of the Scheduled Actions.

In this role, PBMs establish drug lists called formularies that determine which diabetes drugs are covered and not covered for nearly every payor. Most prescribing doctors and patients, of course, opt for covered medications. PBMs thus effectively control utilization of the at-issue drugs. In short, Insulin Manufacturers control the product, PBMs control the buyers, and collectively these two groups of Defendants control the price paid by nearly every diabetic and payor in the United States.

Knowing the importance of price, volume, and access, Insulin Manufacturers and PBMs work together to maximize their own profits to the detriment of diabetic consumers and payors. Given that PBMs and Insulin Manufacturers treat diabetes drugs as interchangeable, formulary inclusion depends on which Insulin Manufacturer increases the PBM's bottom line the most. Insulin Manufacturers, knowing formulary position directly correlates to sales volume, simply agree to raise their reported prices and then secretly kick back a significant portion of that price to PBMs, and, in exchange, PBMs grant Insulin Manufacturers' medications favorable formulary positions.

Insulin Manufacturers also know that every way PBMs make money off these drugs is directly tied to the inflated list prices. It is a win-win for Defendants: PBMs make money from the increased prices and the secret kick back payments, while Insulin Manufacturers lock in huge volume and maintain their own profit margins. The result, however, is unconscionable –diabetic consumers have overpaid for insulins by millions of dollars a year for nearly two decades and

continue to do so even today. The Insulin Pricing Scheme has been documented by a number of courts and government institutions, including:

- The U.S. Senate Finance Committee, which published a bipartisan 89-page report in 2021 detailing the Scheme and its effects: "Insulin: Examining the Factors Driving the Rising Cost of a Century Old Drug." Staff Report. United States Senate Finance Committee. Jan. 14, 2021;[4]

- The Federal Trade Commission issued its "Policy Statement of the Federal Trade Commission on Rebates and Fees in Exchange for Excluding Lower-Cost Drug Products" in June 2022, highlighting the links between the PBM-Manufacturer relationships and skyrocketing insulin prices.[5]

### B. Procedural History.

The Mississippi Action was filed in the Chancery Court of Hinds County, Mississippi, on June 7, 2021. On October 21, 2021, Express Scripts removed the action to the United States District Court for the Southern District of Mississippi based on the federal officer removal statute and its pharmacy benefit contract with the U.S. Department of Defense (DOD). The State of Mississippi filed its Third Amended Complaint on February 17, 2022. Almost all claims in the Third Amended Complaint survived various motions to dismiss. Discovery began following the Rule 26(f) conference, in November, 2022.

The Arkansas Action was filed on May 11, 2022, in the Circuit Court of Pulaski County, Arkansas. Express Scripts removed the action to the United States District Court for the Eastern

---

[4] Available at https://www.finance.senate.gov/imo/media/doc/Grassley-Wyden%20Insulin%20Report%20(FINAL%201).pdf. Accessed March 17, 2023.
[5] Available at https://www.ftc.gov/legal-library/browse/policy-statement-federal-trade-commission-rebates-fees-exchange-excluding-lower-cost-drug-products. Accessed March 17, 2023.

District of Arkansas on June 10, 2022 based on the same federal officer theory and DOD contract asserted in the Mississippi Action. Motions to dismiss are pending. Discovery began following the Rule 26(f) conference on December 12, 2022.

The Illinois Action was filed on December 2, 2022, in the Circuit Court of Cook County, Illinois. On January 11, 2023, Express Scripts removed the action to the United States District Court for the Northern District of Illinois based on the same federal officer theory and DOD contract advanced in the other Actions. While the Rule 26(f) conference occurred on March 27, 2023, no discovery has taken place.  Motions to dismiss are pending.

The Kansas Action was filed on December 2, 2022, in the District Court of Shawnee County, Kansas. On January 11, 2023, Express Scripts removed the action to the United States District Court for the District of Kansas based on the same federal officer theory and DOD contract advanced in the other Actions. The Rule 26(f) conference occurred on February 24, 2023, but, to date, no discovery has taken place. Motions to dismiss are pending.

The Montana Action was filed on September 29, 2022, in the First Judicial District Court of Lewis and Clark County, Montana. On January 11, 2023, Express Scripts removed the action to the United States District Court for the District of Montana based on the same federal officer theory and DOD contract at-issue in the other Actions. Motions to dismiss are pending.

Movants anticipate additional States will file similar actions.

II.    ARGUMENT

**A. Transfer Fulfills the Goals of Section 1407.**

Section 1407 provides for transfer in "civil actions involving one or more common questions of fact … pending in different districts" when such transfer and coordination will "promote the just and efficient conduct of such actions" and will be for "the convenience of parties and witnesses." 28 U.S.C. § 1407(a). Coordination under Section 1407 "eliminate[s] the

potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate courts in multidistrict related civil actions." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491-92 (J.P.M.L. 1968). Transfer of the Scheduled Actions fulfills each of the statutory criteria.

### 1) The Scheduled Actions involve complex but virtually identical factual issues.

Section 1407 "does not require a complete identity or even majority of common factual issues as a prerequisite to transfer" but rather only requires that the actions share one or more factual issues. *In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005). In situations in which various cases filed in different districts feature common questions of fact stemming from substantially identical complaints, centralization under Section 1407 "eliminate[s] duplicative discovery, prevent[s] inconsistent pretrial rulings, particularly with respect to class certification, and conserve[s] the resources of the parties, their counsel, and the judiciary." *In re Deere & Co. Repair Servs. Antitrust Litig.*, 607 F. Supp. 3d 1350, 1351 (J.P.M.L. 2022); *In re Hotel Tel. Charge Antitrust Litig.*, 341 F. Supp. 771, 772 (J.P.M.L. 1972) (transferring and consolidating cases that were "virtually identical," "contain[ed] parallel allegations" of conspiratorial conduct of defendants and sought "to develop a common factual background concerning the formation and terms of any conspiracy, the possible fraudulent concealment of the conspiracy and the methods developed for assessing the charges.").

Transfer, coordination, and centralization is appropriate because the Scheduled Actions involve a nearly identical factual background and substantially similar complaints against the same defendants. Thus, the Scheduled Actions share nearly all of the material factual issues, including:

- Whether PBMs contributed to higher list prices while representing to Plaintiffs that they were lowering the overall price of insulins and promoting the health of diabetics;

6

- Whether Insulin Manufacturers and PBMs entered into agreements to artificially and unlawfully inflate the prices of insulin for their profit and gain;

- Whether Insulin Manufacturers worked in coordination with each other and with PBMs to raise the price of insulins in furtherance of the Insulin Pricing Scheme;

- Whether PBMs sought to increase their profits and conceal the Insulin Pricing Scheme by inserting intermediaries between PBMs and Insulin Manufacturers;

- Whether Insulin Manufacturers suppressed generic or biosimilar competition;

- The causes of the astronomical increases in the price of insulins over time;

- The layered relationships between and agreements among PBMs and Insulin Manufacturers as they relate to insulins;

- The availability, design, and scope of injunctive relief; and

- The appropriate measure of damages and penalties.

### 2) Coordination and consolidation will promote just and efficient conduct of these related actions.

Coordinating the Scheduled Actions before one judge allows the parties and the Court to address this overlapping discovery in an organized manner and avoid the costly duplication of efforts and judicial resources if the cases proceeded on separate schedules and in separate courts. *In re Invs. Funding Corp. of New York Sec. Litig.*, 437 F. Supp. 1199, 1202 (J.P.M.L. 1977) (noting transfer under Section 1407 would "eliminate duplicative discovery, avoid the possibility of conflicting pretrial rulings and conserve judicial effort"); *In re Chantix (Varenicline) Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, No. MDL 3050, 2022 WL 17843104, at *1 (J.P.M.L. Dec. 22, 2022) (granting transfer and finding centralization would "eliminate duplicative

7

discovery; prevent inconsistent pretrial rulings … and conserve the resources of the parties, their counsel, and the judiciary").

The shared factual issues in the Scheduled Actions will necessarily cause pervasive overlap in both fact and expert discovery, as the plaintiff in each Scheduled Action will seek the same discovery from the same Insulin Manufacturers, PBMs, and non-parties. Specifically, the plaintiffs in the Scheduled Actions must seek documents and deposition testimony related to the negotiation and development of formularies related to insulins; the negotiation of rebates and other payments from Manufacturers to PBMs; the knowledge of Insulin Manufacturers and PBMs of the effects of increased pricing on diabetics; profits and revenues for Insulin Manufacturers and PBMs for insulins over time; internal discussions and analyses regarding use of biosimilar or generic insulins in place of brand-name insulin; among others.

The Scheduled Actions are at an early stage of pretrial proceedings and can immediately benefit from the efficiencies of centralization and coordination. In *In re Lowe's Companies, Inc., Fair Labor Standards Act (FLSA) and Wage and Hour Litigation*, this Panel granted a motion to transfer under Section 1407 when, *inter alia*, the defendants had not given any depositions and there had been "no significant document productions on common issues." 481 F. Supp. 3d 1332, 1333-34 (J.P.M.L. 2020) (describing all actions as "at a relatively early stage of pretrial proceedings"). Similarly, although discovery has recently begun in Mississippi, Arkansas, Illinois, and Kansas, only one deposition has been taken and initial document productions have begun in one of the Actions.

The common factual issues would also benefit from the efficiencies of coordination because, as the Senate Finance Committee pointed out in its 2021 report, the multilayered relationships between Insulin Manufacturers and PBMs are "opaque" yet have "huge

implications for patients, payers, and the Federal government." Senate Insulin Report, *supra,* at 65 ("Although [PBMs] are the centerpiece of drug pricing negotiations [with Insulin Manufacturers"), their practices and business relationships remain largely opaque.") and 88 ("[T]he opaque business practices of pharmaceutical manufacturers and PBMs have huge implications for patients, payers, and the Federal government, with respect to insulin and therapies for other diseases."). Senators Charles Grassley and Ron Wyden have dedicated years to untangling the complexities of PBMs and insulin pricing, yet, at the culmination of their 2021 report, they stated "Undoubtedly, there is more work to be done." *Id.* at 89. Consolidation of these cases before a single judge would allow coordinated discovery of this tangled web of byzantine business relationships.

Without transfer under Section 1407, duplication of efforts is inevitable. The Court in the Mississippi Action entered a Confidentiality Order that – at the insistence of Defendants – expressly prohibits the use of discovery provided in the Mississippi Action in any other case. "[C]entralization will allow a single judge to streamline protective orders and other protocols" in a way that addresses the parties' confidentiality concerns while avoiding the needless duplication and wasted effort of engaging in the same discovery in multiple districts. *In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.*, No. MDL 3047, 2022 WL 5409144, at *2 (J.P.M.L. Oct. 6, 2022).

### 3) Coordinating and consolidating these actions will further the convenience of the parties and witnesses.

For many of the same reasons, transfer will serve the convenience of the witnesses and parties by minimizing unnecessary duplication of discovery requests and expenses, such as travel costs, expert fees, and electronically stored information management costs. Transfer will also allow the parties to conserve their resources in litigating the Scheduled Actions.

Centralization of pretrial proceedings for the Scheduled Actions, and any subsequent tag-along actions, will benefit current and future plaintiffs by providing a single, organized, and easily accessible forum to have discovery adjudicated. *See In re Invs. Funding Corp. of New York Sec. Litig.*, 437 F. Supp. at 1202.

### B. The Panel Should Transfer the Related Actions to the Southern District of Mississippi.

The Insulin Pricing Scheme has severely impacted the plaintiffs in the Scheduled Actions, and Movants request that the Panel transfer the Scheduled Actions to the Southern District of Mississippi for coordinated pretrial proceedings.

Diabetes is an epidemic and a public health crisis in Mississippi. Mississippi has over 400,000 people living with diabetes. An additional 750,000 Mississippi residents have prediabetes, which occurs when a person's blood sugar level is higher than it should be, putting that person at a much greater risk for developing diabetes. Diabetes is the leading cause of blindness, kidney failure and lower limb amputations and is the seventh leading cause of death in Mississippi despite the availability of effective treatment. Over 22% of all hospitalizations in Mississippi are attributable to diabetes. The economic impact of diabetes in Mississippi is staggering. The total estimated cost of diagnosed diabetes in Mississippi is $3.5 billion per year. Approximately 100,000 Mississippians rely on daily insulin treatments to survive, and 300,000 diabetics in Mississippi use either oral medications, insulin, or a combination of both to treat and control diabetes. As a result, hundreds of thousands of Mississippi residents must rely on, and are at the mercy of, these Insulin Manufacturers and PBMs.

The Mississippi Action is the first filed of the Scheduled Actions, and the Honorable Kristi H. Johnson has already decided motions to dismiss. *In re: Ford Motor Co. Defective Spark Plug & 3-Valve Engine Prod. Liab. Litig.*, 844 F. Supp. 2d 1375, 1376 (J.P.M.L. 2012) (granting

transfer and emphasizing district where first action was filed was "proceeding apace" and had been filed long before second action); *In re Metoprolol Succinate Pat. Litig.*, 329 F. Supp. 2d 1368, 1370 (J.P.M.L. 2004) (noting transfer appropriate to district "of the first-filed action" and "pretrial proceedings are already well under way").

### C. The New Jersey Insulin Litigation Is Not Appropriate for Consolidation or Coordination with the Scheduled Actions.

There are four cases involving the Insulin Pricing Scheme pending in the District of New Jersey. The first New Jersey case is Civil Action No. 17-699, captioned *In re Insulin Pricing Litigation* (the IPP Action), a consolidated putative class-action filed six years ago on February 2, 2017. As presently configured, it asserts claims by indirect purchasers and consumers of analog insulins in 36 states, including Arkansas, Illinois, and Kansas, but not Mississippi or Montana. The IPP Action is pending before the Honorable Brian R. Martinotti.

Although there are common factual questions between the Scheduled Actions and the IPP Action, there are material differences which preclude consolidation or coordination. Foremost is the fact that the Scheduled Actions include both Insulin Manufacturers and PBMs as defendants, whereas the IPP Action includes only Insulin Manufacturers. Indeed, as Judge Martinotti noted in refusing Rule 42 consolidation or coordination of the IPP Action with another New Jersey insulin case, "the PBM Defendants . . . [are] a class of defendants the IPP Plaintiffs specifically sought to exclude from their case." *In re Insulin Pricing Litig.*, No. 317CV699BRMLHG, 2020 WL 5642002, at *6 (D.N.J. Sept. 22, 2020). Moreover, the Scheduled Actions and the IPP Action are at substantially different stages of litigation. *Fin-Ag, Inc. v. NAU Country Ins. Co.*, No. 08-4141, 2009 WL 44479, at *3 (D.S.D. Jan. 6, 2009) ("Because the cases are at much different stages of preparation and litigation, consolidation would cause further delay and, thus, is not appropriate."). Several of the Scheduled Actions were recently filed, and, in the oldest of

11

the Scheduled Actions – the Mississippi Action –initial document productions began only within the last few months. In contrast, the IPP Action has been pending for over six years. These material differences between the Scheduled Actions and the IPP Action preclude consolidation.

The second New Jersey case is a consolidated set of putative class actions captioned *In Re: Direct Purchaser Insulin Pricing Litigation*. No. 3:20-CV-03426 (D.N.J. 2020) (the DPP Actions). The DPP Actions were filed on behalf of direct purchasers (such as wholesalers) of analog insulins against Insulin Manufacturers and PBMs. The DPP Actions are pending before the Honorable Zahid N. Quraishi. Again, material differences between the Scheduled Actions and the DPP Actions preclude consolidation or coordination. As Judge Martinotti noted in his rejection of Rule 42 consolidation or coordination of the DPP and IPP Actions, the direct purchaser plaintiffs in the DPP Actions, such as wholesalers, are in a materially different position than individual consumers who purchased insulin to treat their diabetes and whose interests the Scheduled Actions seek to protect:

> [T]he Court finds there are material differences between the DPP Actions and the IPP Action that preclude coordination. As discussed in their opposition brief, the IPP Plaintiffs allege that wholesalers, like the DPP Plaintiffs, are not victims of the Defendants' pricing scheme. Rather, "as sophisticated members of the pharmaceutical industry, the wholesalers kn[e]w of the relevant list price scheme" and "play[ed] a part [in] the unlawful scheme to widen the gulf between benchmark prices and net manufacturer prices."

*In re Insulin Pricing Litig.*, No. 317CV699BRMLHG, 2020 WL 5642002, at *6 (D.N.J. Sept. 22, 2020) (citations omitted). The different positions of plaintiffs in the DPP Actions and the Scheduled Actions preclude consolidation or coordination.

The Third New Jersey Action is *State of Minnesota, by its Attorney General Keith Ellison v. Sanofi-Aventis U.S. LLC et al.*, Case No. 2:18-CV-14999 (D.N.J. 2018) (the Minnesota Action). The Minnesota Action was filed over four years ago, on October 16, 2018, against the

Insulin Manufacturers only. The Minnesota Action is pending before the Honorable Brian R. Martinotti. Unlike the Scheduled Actions, PBMs are not defendants in the Minnesota Action. Moreover, the Minnesota Action is in a significantly different procedural posture because general fact discovery is closed. These material differences preclude consolidation or coordination of the Minnesota Action with the Scheduled Actions.

The final New Jersey insulin case is *MSP Recovery Claims, Series, LLC et al. v. Sanofi Aventis U.S. LLC et al.*, Case No. 2:18-CV-02211 (D.N.J. 2018) (the MSP Action). The MSP Action was filed on February 15, 2018, on behalf of assignees of Medicare Advantage plans. The defendants in the MSP Action are Insulin Manufacturers but not PBMs. The MSP Action is pending before the Honorable Brian R. Martinotti. The MSP Action involves insulin payments and reimbursements solely by Medicare Plans whereas the Scheduled Actions do not involve any Medicare Plans and are based, in large part, on payments and purchases by consumers outside the Medicare context. The MSP Action includes claims under the consumer protection laws of 20 states including Arkansas, but not Kansas, Illinois, Mississippi, or Montana. In addition, fact discovery in the MSP Action is substantially complete. These material differences preclude consolidation or coordination of the Minnesota Action with the Scheduled Actions.

### III.    CONCLUSION

For the aforementioned reasons, Movants respectfully request that the Panel transfer and consolidate the Scheduled Actions, as well as any tag-along actions subsequently filed by state Attorneys General, to the Southern District of Mississippi for coordinated pretrial proceedings.

Dated: May 9, 2023

Respectfully submitted,

**Counsel for Movants, the States of Arkansas, Illinois, Kansas, Mississippi, and Montana**

*/s/ Edwin S. Gault, Jr.*
Edwin S. Gault, Jr.
Walter G. Watkins, III
Tanya D. Ellis
Courtney C. Hunt
Daniel J. Mulholland
T. Joel Fyke
Jennifer M. Studebaker
**Forman Watkins & Krutz LLP**
210 E. Capitol Street, Suite 2200
Jackson, MS 39201-2375
Tel: (601) 960-8600
Fax: (601) 960-8613
win.gault@formanwatkins.com
Trey.Watkins@formanwatkins.com
Tanya.Ellis@formanwatkins.com
courtney.hunt@formanwatkins.com
daniel.mulholland@formanwatkins.com
joel.fyke@formanwatkins.com
jennifer.studebaker@formanwatkins.com

*/s/ W. Lawrence Deas*
W. Lawrence Deas
William Liston, III
**Liston & Deas, PLLC**
605 Crescent Blvd., Suite 200
Ridgeland, MS 39157
Tel: (601) 981-1636
Fax: (601) 982-0371
lawrence@listondeas.com
william@listondeas.com

*/s/ Matthew C. McDonald*
Matthew C. McDonald
**David Nutt & Associates**
605 Crescent Blvd., Suite 200
Ridgeland, Mississippi 39157
Tel: (601) 898-7302
mattm@davidnutt.com

*/s/ Josh Wackerly*
Josh Wackerly
Joanne Cicala
R. Johan Conrod
**The Cicala Law Firm PLLC**
101 College Street
Dripping Springs, Texas 78620
Tel: (512) 275-6550
Fax: (512) 858-1801
joanne@cicalapllc.com
josh@cicalapllc.com
johan@cicalapllc.com

OF COUNSEL:

Kate Donoven
Kim DuVall Renteria
**Arkansas Attorney General's Office**
323 Center Street, Suite 200
Little Rock, AR 72201
Tel: (501) 682-8114
Fax: (501) 682-8118
kim.renteria@arkansasag.gov
kate.donoven@arkansasag.gov

David F. Buysse
**Deputy Chief, Public Interest Division**
**Illinois Attorney General's Office**
100 W. Randolph Street – 12th Floor
Tel: (312) 590-7844
david.buysse@ilag.gov

Darren Kinkead
**Deputy Chief, Special Litigation Bureau**
**Office of the Attorney General of Illinois**
100 W. Randolph Street – 11th Floor
Tel: (773) 590-6967
darren.kinkead@ilag.gov

Christopher Teters
**Office of the Kansas Attorney General**
120 SW 10th Avenue
Topeka, KS 66612-1597
Tel: (785) 296-3751
Fax: (785) 291-3699
chris.teters@ag.ks.gov

Tricia L. Beale
**Mississippi Attorney General's Office**
1141 Bayview Ave., Suite 402
Biloxi, MS 39530
Tel: (228) 596-8803
tricia.beale@ago.ms.gov

Anna K. Schneider, MT Bar No. 13963
Bureau Chief, Consumer Protection
**Montana Department of Justice**
P.O. Box 200151
Helena, MT 59620-0151

Tel: (406) 444-4500
Fax: (406) 444-3594
anna.schneider@mt.gov

## Certificate of Service

I hereby certify that on May 9, 2023, the clerks of the relevant district courts and counsel for the parties have been served with the foregoing by U.S. mail or electronic mail, as indicated in the Proof of Service filed herewith.

/s/ Edwin S. Gault, Jr.
Edwin S. Gault, Jr.