**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| IN RE: INSULIN PRICING LITIGATION | § | MDL NO. 3080 |

**MANUFACTURERS' OPPOSITION TO MOTION FOR TRANSFER OF
ACTIONS PURSUANT TO 28 U.S.C. § 1407**

Pursuant to 28 U.S.C. § 1407 and J.P.M.L. Rule 6.2, Eli Lilly and Company, Novo Nordisk Inc., and Sanofi-Aventis U.S. LLC (collectively, the "Manufacturers") submit their Memorandum in Opposition to Plaintiffs' Motion to Transfer and request denial of transfer.[1]

**INTRODUCTION**

Plaintiffs are five attorneys general, all represented by the same Mississippi-based outside counsel, who seek to create an MDL in Mississippi consisting of their own five lawsuits relating to insulin pricing (the "Scheduled Actions" or "Actions"). The Defendants in those Actions are all the same, and—like Plaintiffs—are each represented by the same lead counsel across those cases. And Plaintiffs' request specifically *excludes* other insulin pricing suits filed by attorneys general that those outside counsel do not represent.[2] Plaintiffs' claim that an MDL is needed to ensure "coordination" is belied by the fact the parties to those Actions have all *already agreed* to—and courts have *already ordered*—coordination across these cases. Plaintiffs' motion fails for multiple, independent reasons.

---

[1]   Manufacturers also oppose transfer of the two actions in the Notice of Related Actions filed on May 26, 2023 by the County of Albany, New York and Lake County, Illinois (the "County Actions"). ECF No. 11. The Counties waited until the day this brief was due to file a response explaining their request to consolidate their suits with the five Scheduled Actions. *See* ECF No. 35. Manufacturers will file a separate brief in response.

[2]   Despite acknowledging that suits by the California, Louisiana, Minnesota, and Puerto Rico state attorneys general are pending in other districts (Br. at 1 n.1, 12-13), Plaintiffs do not include them in their request, and, tellingly, these states have not joined Plaintiffs' request.

1

To start, Plaintiffs' proposal for an MDL is a solution in search of a problem. The *same* counsel in these *five* cases are already coordinating with Defendants on case schedules, trial dates, discovery deadlines, depositions, and document production across the Actions, as memorialized in discovery orders in these cases. The parties can synchronize discovery through joint phone calls or emails—and, indeed, have already been doing so. A new MDL will only waste judicial resources and further delay resolution of these cases.

Worse still, the motion is actually a problem posing as a solution. Putting aside that Plaintiffs propose to create an MDL involving only a subset of the state attorney general insulin pricing cases filed over the past six years, the Actions themselves involve disparate state-law claims and factual issues, rendering consolidation inefficient. Each State has sued under a different set of state-specific consumer protection statutes and common law claims, and those differing claims will present distinct factual and legal issues for discovery and dispositive motions. Because there is no benefit in consolidating idiosyncratic state-law questions into one district, these cases should remain in their respective home districts.

Moreover, the motion barely disguises Plaintiffs' true (and impermissible) purpose: forum shopping. Contrary to § 1407, Plaintiffs' proposed transfer location will not promote convenience for anyone but Plaintiffs' outside counsel. Defendants, lead defense counsel, and four out of five Plaintiffs do not reside in or near Jackson, Mississippi. Indeed, it is clear that Plaintiffs propose Mississippi as the forum solely because (a) it lies within a few miles of their offices and (b) it is the only court in the five cases brought by Plaintiffs' counsel that has denied Defendants' motions to dismiss. The Panel should not allow Plaintiffs' counsel to initiate five separate actions, represent to those judges that they intend to coordinate informally, and then simply pick which judge they like best. If Plaintiffs were truly interested in efficiency, they would have proposed the District of

New Jersey—the district that has been overseeing insulin pricing cases for over six years and that has more such cases pending (four) than any other district, including another state attorney general action that Plaintiffs excluded from their request. But because Plaintiffs fail to justify consolidation in *any* District, the Panel should simply deny their request.

## BACKGROUND

### A. Overview of the Actions

Plaintiffs' motion concerns five insulin-pricing lawsuits against insulin manufacturers and Pharmacy Benefit Managers (PBMs) filed by the same outside counsel on behalf of state attorneys general—namely, Arkansas, Illinois, Kansas, Mississippi, and Montana. The Manufacturers—Novo, Sanofi, and Lilly—are pharmaceutical companies that research, develop, manufacture, and sell prescription drugs, including insulin. They do not sell medications directly to consumers or health insurers. Typically, the Manufacturers sell their medications to wholesalers, who re-sell the medications downstream to pharmacies. Pharmacies then sell the medications to patients.

CVS Caremark, Express Scripts, and OptumRx are PBMs that contract with and provide pharmacy-related services to health insurance plan sponsors, employers, unions, trusts, and government agencies. PBMs develop lists of drugs called "formularies" that determine whether insurance plans will cover certain medications and how much members will pay for them. PBMs also negotiate rebates from Manufacturers in connection with formulary placement—a practice common throughout the entire branded pharmaceutical industry. *See* IL ECF No. 60 at 13-14. PBMs share these rebates under the terms of their client contracts with health insurance plans.

Plaintiffs allege that they overpaid for insulin for employees and residents in their states. They assert that the PBMs and Manufacturers—counterparties who negotiate vigorously and at arm's length—conspired to raise the list price of insulin products. Br. at 2. Plaintiffs seek recovery under a diverse array of state statutory and common law claims, including state-specific deceptive

3

trade practices, unjust enrichment, and civil conspiracy. Defendants vigorously deny these claims.

All the Scheduled Actions have the same lead counsel representing the same respective parties, both plaintiffs and defendants. Arkansas, Illinois, Kansas, Mississippi, and Montana have retained identical lead counsel, comprised of (a) Liston & Deas PLLC, (b) Forman Watkins & Krutz, LLP, (c) David Nutt & Assoc., and (d) The Cicala Law Firm PLLC. Three of these four firms are located in or around Jackson, Mississippi, the location they now claim as the most convenient venue for all parties. Defendants also have the same lead counsel across all Actions. Davis Polk & Wardwell LLP (Novo), Jones Day (Sanofi), and Kirkland & Ellis LLP (Lilly) each represents the same Manufacturers. Morgan, Lewis & Bockius LLP (Express Scripts), Williams & Connolly LLP (CVS Caremark), and Alston & Bird LLP (OptumRx) each represents the same PBMs and affiliates. None of these Defendants or their lead counsel reside in, or even near, the proposed transferee district in Jackson. Most of the states' witnesses and evidence also reside hundreds, or even thousands, of miles from the proposed transferee court in Mississippi.

The five Actions are not the first insulin pricing lawsuits asserting these allegations—not by a longshot. In February 2017, individual consumers filed a putative class action against the Manufacturers in the District of New Jersey. *In re Insulin Pricing Litigation*, No. 2:17-cv-00699 (D.N.J.). Three other actions followed: a suit involving health insurers was filed in February 2018, the State of Minnesota filed suit in October 2018, and a group of wholesalers filed a putative class action in March 2020. *See MSP Recovery Claims, Series, LLC, et al. v. Sanofi-Aventis U.S. LLC, et al.*, No. 2:18-cv-02211 (D.N.J.); *State of Minnesota v. Sanofi-Aventis U.S., et al.*, No. 2:18-cv-14999 (D.N.J.); *In re Direct Purchaser Insulin Pricing Litigation*, No. 3:20-cv-03426 (D.N.J.). All these cases have been pending in the District of New Jersey, and all have been proceeding through discovery, with three of the four referred to a single Special Master for discovery.

B.  **Procedural Posture**

Defendants have collectively filed nineteen (19) motions to dismiss in the Arkansas, Illinois, Kansas, and Montana actions—all of which remain undecided. Eight of these motions challenge all claims under Rule 12(b)(6). The remaining eleven motions challenge personal jurisdiction on behalf of one or more PBMs. The five Arkansas motions to dismiss have been pending for over six months. Five motions to dismiss are pending in the Montana court, which recently held oral argument. Nine additional motions are now fully briefed and ready for review in the Illinois and Kansas courts. The Mississippi action is the only one of the five cases that has progressed beyond the pleading stage. That court denied the Manufacturers' 12(b)(6) motion to dismiss, denied the PBMs' 12(b)(6) motion to dismiss (except as to one defendant affiliated with CVS Caremark), and granted a 12(b)(2) motion to dismiss brought by four of OptumRx's parent companies. Initial document productions and one deposition have occurred in that litigation.

Outside the Mississippi action, the parties are already collaborating and coordinating ongoing discovery with the cases where motions to dismiss remain pending. The same group of lawyers have conducted planning conferences in four of the Actions, coordinating case scheduling and anticipated discovery issues. The same group of lawyers have aligned the proposed case schedules and trial settings across the Actions to prevent conflicts in pretrial deadlines and trial dates. And the same group of lawyers have also negotiated similar confidentiality orders, coordinated initial depositions, and shared document productions across the Actions.

## LEGAL STANDARD

Section 1407 exists to promote "the convenience of parties and witnesses" and "the just and efficient conduct of such actions." 28 U.S.C. § 1407. "[C]entralization under Section 1407," however, "should be ***the last solution*** after considered review of all other options." *In re Best Buy*

*Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011) (emphasis added). Where "cooperation and informal coordination are practicable alternatives to centralization," the Panel should deny transfer under Section 1407. *In re Enhanced Recovery Co., LLC, Tel. Consumer Prot. Act (TCPA) Litig. (No. III)*, 278 F. Supp. 3d 1371, 1373 (J.P.M.L. 2017). And where a party seeks consolidation of "only a minimal number of actions," it "bears a heavier burden of demonstrating the need for centralization." *In re Nat'l Grid Tax Gross-Up Adder Litig.*, 2023 WL 2876091, at *1 (J.P.M.L. Apr. 10, 2023).

**ARGUMENT**

**I.      TRANSFER IS UNNECESSARY AND INEFFICIENT.**

**A.      Transfer Is Unnecessary Because The Actions Have The Same Counsel, Who Are Already Coordinating Discovery And Pretrial Matters.**

Plaintiffs ignore the most relevant fact for evaluating their motion: the parties *all* have the same lead counsel across all five Actions and are already coordinating extensively on discovery, scheduling, and other pre-trial issues. The Panel has repeatedly denied consolidation where informal coordination is practicable given common representation by relatively few law firms. *In re: Boehringer Ingelheim Pharms., Inc., Fair Lab. Standards Act (FLSA) Litig.*, 763 F. Supp. 2d 1377, 1378 (J.P.M.L. 2011) ("Because plaintiffs in three actions share counsel and [defendant] is represented by common counsel, alternatives to formal centralization, such as voluntary cooperation among the few involved counsel and courts, appear viable."); *In re Covidien Hernia Mesh Prod. Liab. Litig.*, 481 F. Supp. 3d 1348, 1349 (J.P.M.L. 2020) (denying consolidation where "[t]he presence of common counsel … should facilitate informal coordination of th[e] relatively small number of actions"); *Nat'l Grid*, 2023 WL 2876091, at *1 (denying consolidation where there were "just three actions [] pending and all plaintiffs are represented by common counsel"); *Enhanced Recovery*, 278 F. Supp. 3d at 1372 (denying consolidation where plaintiffs were "all …

6

represented by the same counsel"). The likelihood of informal coordination is especially high "in light of the historic cooperation among state attorneys general." *In re: Standard & Poor's Rating Agency Litig.*, 949 F. Supp. 2d 1360, 1361 (J.P.M.L. 2013).

For this very reason, the Panel has repeatedly denied motions to consolidate similarly small sets of actions. *See, e.g.*, *In re Covidien Hernia Mesh Prod. Liab. Litig.*, 481 F. Supp. 3d 1348, 1348-49 (J.P.M.L. 2020) (denying centralization of 12 actions pending in 9 districts because "only a minimal number of actions [we]re involved"); *Nat'l Grid*, 2023 WL 2876091, at *1 (denying centralization of "just three actions"). Unsurprisingly, Plaintiffs' motion relies largely on cases that consolidated far larger (and more widespread) groups of actions. *See In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.*, 2022 WL 5409144 (J.P.M.L. Oct. 6, 2022) (consolidating ***28 actions*** pending in 17 districts, with ***56 related actions*** pending across 24 different districts); *In re Lowe's Companies, Inc., Fair Lab. Standards Act & Wage & Hour Litig.*, 481 F. Supp. 3d 1332, 1333 (J.P.M.L. 2020) (consolidating ***19 actions*** pending in 19 districts); *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 486 (J.P.M.L. 1968) (consolidating ***37 actions***).[3] ***None*** of the cases Plaintiffs cite involved the ***same*** counsel for all parties.

Here, coordination does not require reshuffling five federal dockets to create a new MDL. That is because coordination can—and, in fact, *does*—already occur through phone calls and emails between these same attorneys here. Indeed, informal coordination pervades every facet of these cases. The parties have conducted four planning conferences, coordinated the proposed case schedules and trial settings across the Actions to address conflicts in pretrial deadlines and trial

---

[3] In the few cases Plaintiffs cite involving a small number of actions, the parties overwhelmingly agreed to transfer. *See In re Ins. Brokerage,* 360 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005) ("The overwhelming majority of responding parties either agree upon or do not oppose centralization."); *In re Metoprolol Succinate Pat. Litig.*, 329 F. Supp. 2d 1368 (J.P.M.L. 2004) (plaintiffs and three of four defendants agreed on consolidation).

7

dates, aligned document productions across the Actions through similar confidentiality and protective orders, and tracked negotiations on discovery responses, including relevant time periods of discovery, across the cases. *See* Section I.B. There is simply no need for the Panel to intervene, given that counsel have "a demonstrated track record of successfully coordinating the litigation." *In re Glob. Tel\*Link Corp. Inmate Calling Servs. Litig.*, 140 F. Supp. 3d 1338, 1339 (J.P.M.L. 2015) (finding informal coordination practicable where there were "few" counsel, a "limited number of actions"). A formal transfer order would provide nothing more than the parties have already achieved informally across the handful of cases at issue here.

**B.     The Parties Have Shown That They Can Coordinate Without An MDL.**

Plaintiffs' motion also omits *all* the evidence that shows the reality of the parties' extensive informal coordination. First, Section 1407 transfer may be unnecessary "where the parties could seek to agree upon a stipulation that any discovery relevant to more than one action may be used in all those actions." *In re Eli Lilly & Co. (Cephalexin Monohydrate) Pat. Litig.*, 446 F. Supp. 242, 244 (J.P.M.L. 1978). The parties have been doing precisely that. As just one example, the parties negotiated protocols in the Mississippi, Arkansas, and Kansas Actions to streamline "***re-production of Documents or ESI that were previously produced*** by the Producing Party in other litigation or proceedings." MS ECF No. 175 at 7; AR ECF No. 137 at 7; KS ECF No. 99 at 6-7 (emphases added); *see also* Ex. 1 (5/12/2023 Sanofi Letter to State of Kansas) (stipulating that Sanofi's Mississippi document productions may be used in Kansas).

Second, the parties are coordinating depositions. The Panel has rejected consolidation where "notices for a particular deposition could be filed in all actions, thereby making the deposition applicable in each action." *Eli Lilly*, 446 F. Supp. at 244; *see also* Manual Complex Lit. § 20.14 (4th ed.). The parties are doing just that. The parties have agreed in deposition protocols that they "***will coordinate depositions with other pending cases*** regarding insulin pricing

8

that involve similar allegations, but only inasmuch as a Party is or becomes subject to discovery in those matters." Ex. 2, KS Dep. Protocol ¶ 16 (emphasis added).  The parties are also cross-noticing depositions across the Actions.  For example, in the Mississippi action, the Caremark Defendants cross-noticed a deposition for the Arkansas and Illinois cases.  *See* ECF No. 2-2 at 22 (AR ECF No. 141); ECF No. 1-6 at 14 (IL ECF No. 91).  Moreover, the current Kansas deposition protocol states "[b]efore noticing the deposition of a witness who was previously deposed in other insulin pricing litigation, the Parties shall confer with Counsel for the witness regarding whether to deem the prior deposition to have been taken in this Action." Ex. 2, KS Dep. Protocol ¶ 17.

The parties have also committed to coordinating across cases going forward.  For example, in the Arkansas Action, the parties informed the Court of ongoing coordination efforts with the Mississippi case (notwithstanding the fact that the Arkansas case may not make it past the pleading stage): "The parties have prepared a schedule with discovery deadlines ***connected to the scheduling order in the Mississippi action*** and have ***agreed to coordinate discovery and avoid the duplication of discovery***, if this action proceeds to discovery (*e.g.,* multiple depositions of the same parties, individuals or entities; repetitive and duplicative ESI and document productions, etc.)."  AR ECF No. 123 at 4 (emphases added).  Illustrating that coordination, "the Parties submit[ted] a table … which compares the dates for trial, discovery and other milestones in the Mississippi action with those proposed by the Parties in this action." *Id.*  The parties then requested certain deadlines from the Arkansas court "to ***coordinate and avoid duplication of discovery in this action and the Mississippi action***." *Id.* at 5 (emphasis added).

The same coordination extends to the Illinois Action, where the parties explicitly committed to coordinate and cooperate for discovery across these Actions:

> At present, this action is one of five (5) actions which have been filed by states (Mississippi, Arkansas, Montana, Kansas, and Illinois) against the Defendants in

> which *counsel for the parties in this action are also serving as counsel for the parties in the additional state litigation actions*.
>
> The parties in this matter shall *endeavor to avoid duplication of discovery with any other actions concerning insulin pricing brought by State Attorneys General*, … Counsel for the parties have, therefore, discussed conducting discovery in these actions in a manner that is efficient by *avoiding duplication in discovery*, including multiple depositions of the same witnesses with respect to the same topics.

*See* IL ECF No. 93 at 6-7 (emphases added).

The parties have also aligned the document production protocols, confidentiality orders, and the discovery limitations across multiple Actions. For example,

- For the Arkansas and Mississippi Actions: "The Parties anticipate[d] the disclosure or production of electronically stored information ("ESI") or computer-based media in this action *and a related action in Mississippi*. The Parties have submitted to the Mississippi District Court a jointly-prepared Protocol for the Discovery of Electronically Stored Information and Hard Copy Documents ("ESI Protocol") (Exhibit "B"). The Parties anticipate[d] submitting a *materially similar protocol* for the Court's entry in this matter," and then did so. *See* AR ECF No. 123 at 2 (emphasis added); AR ECF No. 136-137. "The Parties propose[d] the Court enter the *same limitations on discovery that they agreed to in the Mississippi action*." AR ECF No. 123 at 4 (emphasis added).

- For the Kansas Action: The Parties agreed to a document production protocol and protective orders mirroring the Mississippi and Arkansas Actions. KS ECF No. 99, 101.

Given these concrete examples of voluntary coordination, Plaintiffs' vague concerns about duplication and lack of current or future coordination are meritless.[4] Tellingly, Plaintiffs do not identify any specific circumstance that makes these five Actions unwieldy. Insulin pricing lawsuits were first filed in 2017—six years ago—yet Plaintiffs lack any evidence of coordination problems since then. *See Covidien*, 481 F. Supp. 3d at 1348-49 (denying centralization in part because only twelve actions had been filed after several years). Plaintiffs' allusion to "future plaintiffs" (Br. at 10) is of no moment because the "mere possibility of future filings" carries no

---

[4] Plaintiffs erroneously claim they are barred from using documents across these Actions. Br. at 9. After motions to dismiss have been resolved, or document productions have begun, Manufacturers will agree to allow cross-Action use of documents, as indicated in their letters.

weight towards consolidation. *In re Qualitest Birth Control Prod. Liab. Litig.*, 38 F. Supp. 3d 1388, 1389 (J.P.M.L. 2014) ("[W]e are disinclined to take into account the mere possibility of future filings in our centralization calculus"); *In re Route 91 Harvest Festival Shootings in Las Vegas, Nevada, on Oct. 1, 2017*, 347 F. Supp. 3d 1355, 1358 (J.P.M.L. 2018) (rejecting argument that the litigation will expand significantly, even when movant had "received pre-litigation hold letters from at least 63 attorneys on behalf of 2,462 individuals, and … one attorney claim[ed] that 22,000 lawsuits [we]re expected"); *In re Qualitest*, 38 F. Supp. 3d at 1389 (rejecting consolidation argument that there "[we]re 113 additional claimants that ha[d] not yet filed suit"). The vague specter of future unwieldy litigation does not warrant consolidation of five cases.

Unlike these Actions, Plaintiffs rely heavily on cases where informal coordination had proven "impracticable." *See, e.g.*, *In re Lowe's Companies, Inc., Fair Lab. Standards Act & Wage & Hour Litig.*, 481 F. Supp. 3d 1332, 1333–34 (J.P.M.L. 2020) (consolidating nineteen actions in nineteen districts where "informal coordination" "[wa]s impracticable in th[at] litigation"); *In re Chantix (Varenicline) Mktg., Sales Pracs. & Prods. Liab. Litig. (No. II)*, 2022 WL 17843104, at *2 (J.P.M.L. Dec. 22, 2022) (consolidating actions where "parties ha[d] been in contentious litigation over transfer motions for more than a year"). Here, the parties have *already agreed* to coordinate to avoid duplication. *See, e.g.*, IL ECF No. 93 at 6-7 ("The parties in this matter shall endeavor to avoid duplication of discovery with any other actions concerning insulin pricing litigation brought by State Attorneys General"). And on top of the parties' coordination efforts, the five district courts can also coordinate with one another to minimize duplication. *See In re Tex. Instruments Inc. Emp. Pracs. Litig.*, 441 F. Supp. 928, 929 (J.P.M.L. 1977) ("[C]onsultation and cooperation between the two concerned district courts, if deemed appropriate by those courts, coupled with the cooperation of the parties, would be sufficient to minimize the possibility of

conflicting pretrial rulings."); *see also* Manual Complex Lit. § 20.14 (4th ed.) ("Even when related cases pending in different districts cannot be transferred to a single district, judges can coordinate proceedings in their respective courts to avoid or minimize duplicative activity and conflicts."). The Kansas court has already taken steps in that direction by ordering the parties to "endeavor to avoid duplication of discovery with any other actions concerning insulin pricing brought by State Attorneys General, including the Mississippi and Arkansas actions." KS ECF No. 97, at 5. While Plaintiffs might *want* consolidation, they cannot establish a *need* for it.

        **C.    Transfer Is Inappropriate While Dispositive Motions Are Pending.**

Another key factor in evaluating Plaintiffs' request is that four of these five lawsuits remain subject to pending motions for dismissal. "The pendency of motions is a well-recognized factor considered by the Panel in determining whether to order transfer and in determining the timing of its transfer order." Multidistrict Lit Man. § 6:21. The Panel prefers "not to preempt the consideration of important motions by a district court" (*id.*), and has repeatedly denied or delayed transfer when dispositive motions are pending. *See*, *e.g.*, *Nat'l Grid*, 2023 WL 2876091, at *1 (denying centralization, in part because of "reasonable prospect … that the multidistrict character of [the] litigation could be resolved through resolution of" pending motions to dismiss); *In re: Droplets, Inc., Pat. Litig.*, 908 F. Supp. 2d 1377, 1378 (J.P.M.L. 2012) (denying centralization where "a potentially case-dispositive motion is pending and has been fully briefed since [two months before the Panel's decision]"); *In re L. E. Lay & Co. Antitrust Litig.*, 391 F. Supp. 1054, 1056 (J.P.M.L. 1975) ("On principles of comity, we are reluctant to transfer any action that has an important motion under submission with a court"); *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 496 (J.P.M.L. 1968) ("On principles of comity, where appropriate, the Panel has in the past timed its actions and constructed its orders in a manner which will permit the transferor courts ... to reach timely decisions on particular issues without abrupt, disconcerting, untimely or

12

inappropriate orders of transfer by the Panel.").

Here, there are **nineteen motions to dismiss** pending across these Actions, many of which have been pending for months. Eight of these motions arise under Rule 12(b)(6), while the remaining eleven motions challenge personal jurisdiction under Rule 12(b)(2). These motions could result in dismissal of some or all of the claims or parties in any given case. And these motions should be granted. For example, the States rest their claims on the notions that the Manufacturers' list prices for insulin were somehow false or fraudulent, but fail to identify *any* deceptive or fraudulent act or omission that could support that claim. *See* AR ECF No. 87 at 9-18; IL ECF No. 60 at 13-18; KS ECF No. 83 at 13-16; KS ECF No. 85 at 16-22; MT ECF No. 85 at 30-33. Some states' claims are barred by statutes of limitation. *See* MT ECF No. 85 at 22-28. The motions for dismissal on personal-jurisdiction grounds only further counsel against consolidation, as "a transferee court can exercise personal jurisdiction **only to the same extent as the transferor court could**." *In re Sterling Fisher & Co. Sec. Litig.*, 222 F. Supp. 2d 289, 300 (E.D.N.Y. 2002) (emphasis added); *accord In re WellNx Mktg. & Sales Pracs. Litig.*, 2010 WL 3652457, at *1 (D. Mass. Sept. 15, 2010); *In re Papst Licensing GMBH & Co. KG Litig.*, 602 F. Supp. 2d 10, 14 (D.D.C. 2009). In short, there is no reason to consolidate cases that should be wholly or at least partially dismissed—an outcome Plaintiffs' motion seeks to preempt.

## II. LEGAL AND FACTUAL DISTINCTIONS PRECLUDE CONSOLIDATION.

The Panel denies transfer where centralization would proliferate "duplicative litigation, [where] nearly every action centralized would require separation and remand—ironically, exacerbating the problem of duplicative litigation that centralization is intended to remedy." *In re Uber Techs., Inc., Wage & Hour Emp. Pracs. Litig. (Uber No. II)*, 254 F. Supp. 3d 1376, 1378 (J.P.M.L. 2017). As with *Uber No. II*, the Panel should deny consolidation here because

"significant state-specific" factual and legal differences in the "state law claims" asserted in the Scheduled Actions preclude efficient consolidation. *Id.*

Each state attorney general has sued under different state-specific consumer protection statutes, which each have different elements and are interpreted by different bodies of case law.[5] Arkansas law focuses on "unconscionable trade practices" (Ark. Code Ann. § 4-88-107), while Illinois law focuses on whether Defendants' pricing "violates Illinois public policy." (ECF No. 136-7 at 135 (¶ 491)). The state's various unjust enrichment claims differ for the same reasons. Some complaints assert claims for civil conspiracy, while others do not. Each state also has different governmental agencies, health insurance plans, and rebate contracts, and each state will pursue different state-specific discovery. *See, e.g.*, Ex. 3 (Mississippi's Zinc 30(b)(6) Deposition Notice) (noticing deposition topics on diabetes medications dispensed under the Mississippi State and School Employees' Health Insurance Plan and the State's Prescription Benefit Rebate Participation Agreement). State-specific tolling rules add yet more complexity. For example, estoppel in Arkansas requires only actual knowledge, while Mississippi employs a "knew or had reason to know standard." *See Scarlett v. Rose Care, Inc.*, 944 S.W.2d 545, 547 (Ark. 1997); *Peavey Elecs. Corp. v. Baan U.S.A., Inc.*, 10 So. 3d 945, 953 (Miss. Ct. App. 2009). It is not enough for Plaintiffs to say there is *some* factual overlap in these claims. *See Uber Techs*, 254 F. Supp. 3d at 1377. The differences are many, and weigh strongly *against* centralization. *See In re Nat'l Rifle Ass'n Bus. Expenditures Litig.*, 521 F. Supp. 3d 1353, 1353 (J.P.M.L. 2021) (observing

---

[5] Arkansas asserts multiple violations of the Arkansas Deceptive Trade Practices Act under Ark. Code Ann. §§ 4-88-101 through 115, *et seq.* Illinois brings claims under the Illinois Consumer Fraud and Deceptive Business Practices Act under 815 ILCS 505/1, *et seq.* Kansas alleges violations of the Kansas Consumer Protection Act under K.S.A. 50-623, *et seq.* Mississippi brings different claims under the Mississippi Consumer Protection Act under Miss. Code §§ 75-24-1, *et seq.* And Montana seeks relief under the Montana Unfair Trade Practices and Consumer Protection Act under Mont. Code Ann. §§ 30-14-101, *et seq.*

that "many individual questions presented by the alleged facts, claims, and parties in each action" outweighed the factual overlap among some of the actions).

Nor is this a circumstance where all relevant events occurred in Mississippi. Quite the opposite: the evidence and witnesses relevant to the Arkansas, Illinois, Kansas, and Montana attorneys generals' claims (as well as Defendants' defenses) are located hundreds, or even thousands, of miles from Mississippi. No Defendants reside in Mississippi. Their witnesses and evidence are not there either. These realities also weigh against any efficiencies from an MDL in Mississippi. *See In re Isidoro Rodriguez Litig.*, 829 F. Supp. 2d 1379, 1380 (J.P.M.L. 2011) (denying transfer; citing the "inconvenience transfer of one or more actions [to Washington state] would pose to the numerous defendants, who are predominately based in the metro Washington, D.C. area"); *In re Trucking Indus. Emp. Pracs. Litig.*, 384 F. Supp. 614, 615-16 (J.P.M.L. 1974) (denying transfer partially because two of the three actions "appear[] to be predominately local in nature, involving, primarily specific local acts of alleged discrimination").

### III.   GIVEN THE INSULIN LITIGATION PENDING IN NEW JERSEY, PLAINTIFFS' PROPOSED MISSISSIPPI FORUM IS FORUM SHOPPING.

For all these reasons, the Actions should not be consolidated. But even if the Panel finds that consolidation is warranted, it should reject Plaintiffs' request to transfer proceedings to the Southern District of Mississippi. Apart from presiding over a single insulin pricing case filed in 2021, that court has no connection to the subject matter or parties in these cases.

Instead, a more appropriate forum would be the District of New Jersey, where—as Plaintiffs acknowledge—two judges have years of experience handling insulin pricing litigation involving the same Manufacturers as in the Actions.[6] To be clear, Manufacturers are *not*

---

[6]   The four insulin pricing cases currently pending in the District of New Jersey are *In re Insulin Pricing Litig.*, No. 2:17-cv-699 (D.N.J) ("*Insulin Pricing*"), *State of Minnesota v. Sanofi-Aventis U.S. LLC*, No. 2:18-cv-14999 (D.N.J.) ("*Minnesota*"), *MSP Recovery Claims, Series,*

requesting that the Panel consolidate the Scheduled Actions with the New Jersey Actions. But *if*—and only *if*—the Panel deems consolidation appropriate, the consolidated Actions should be before one of the New Jersey judges already presiding over substantially similar cases challenging the same putative "insulin pricing scheme." Indeed, while Plaintiffs stress that the "Mississippi Action is the first filed of the Scheduled Actions" and that case has survived dismissal, Br. at 10, they concede that all four of the New Jersey actions—including the earliest-filed state attorney general action—were filed years earlier. *Id.* at 11-13.

As Plaintiffs recognize, the first of the New Jersey actions (*Insulin Pricing*) was filed over six years ago. Plaintiffs in *Insulin Pricing* also assert unfair competition claims against the same manufacturer defendants, challenging the same purported pricing scheme underlying the Scheduled Actions and copying many of the same allegations verbatim. *Compare Insulin Pricing*, ECF No. 1 ¶¶ 10-12, 21, 129 (alleging Defendants participate in a "pricing scheme" to inflate insulin list prices as a "*quid pro quo* for formulary placement"), *with State of Montana, Ex Rel. Austin Kudsen v. Eli Lilly, et al.*, No. 6:22-00087 (D. Mt.), ECF No. 40 ¶ 20 (alleging Defendants participate in an "Insulin Pricing Scheme" whereby they inflate list prices as "*quid pro quo* for formulary inclusion").[7] The same allegations appear in the other New Jersey actions. The

---

*LLC v. Sanofi-Aventis U.S. LLC*, No. 2:18-cv-2211 (D.N.J.) ("*MSP*"), and *In re Direct Purchaser Insulin Pricing Litig.*, No. 3:20-cv-03426 (D.N.J.) ("*Direct Purchaser*"). This brief refers to these cases as the "New Jersey actions."

[7] *Compare Insulin Pricing*, ECF No. 1 ¶ 55 ("The prescription drug industry consists of an opaque and complex network of entities engaged in multiple distribution and payment structures.") *with State of Illinois, Ex Rel. Kwame Raoul v. Eli Lilly, et al.*, 1:23-00170 (D. Ill.), ECF No. 1-1 ¶ 279 ("The prescription drug industry consists of a deliberately opaque network of entities engaged in multiple distribution and payment structures."); *compare also Insulin Pricing*, ECF No. 1 ¶ 123 (alleging that "[i]n 13 instances since 2009," Sanofi and Novo Nordisk raised prices for their insulins "in tandem, taking the same price increase down to the decimal point within a few days of each other"), *with Montana*, ECF No. 40 ¶ 276 (alleging that "[i]n 13 instances since 2009," Sanofi and Novo Nordisk raised prices of their insulins "in tandem, taking the same price within a few days of each other").

Minnesota case, filed by the Minnesota Attorney General, similarly alleges that Defendants participated in a "fraudulent scheme" whereby Manufacturers "inflated list prices" "in exchange for favorable formulary placement." *See Minnesota*, ECF No. 2 ¶¶ 86, 95.  The plaintiffs in the *MSP* and *Direct Purchaser* actions make similar allegations too.  *MSP*, ECF No. 1 ¶¶ 10, 220 (alleging manufacturers conspire with PBMs as part of an "Insulin Pricing Scheme" selling insulin at "inflated and artificial price[s]"); *Direct Purchaser*, ECF No. 112 ¶ 101 (alleging manufacturers and PBMs conspire to "artificially inflate[] [prices] as part of [an] illegal scheme[]").  Since the New Jersey actions were filed, the judges presiding over them have issued numerous rulings, including resolving three rounds of motion to dismiss briefing in *Insulin Pricing*, two rounds of such briefing in *Minnesota* and *MSP*, and one in *Direct Purchaser*.  In addition, the courts in all of those cases have issued rulings on countless discovery disputes over the past several years.

Tacitly acknowledging the plausibility of the District of New Jersey as the more appropriate forum, Plaintiffs preemptively try to cut off that possibility by asserting their cases present "material differences" from the New Jersey actions.  Br. at 11.  This effort is unavailing.

First, Plaintiffs note that the PBMs are not defendants in some of the New Jersey actions (*Insulin Pricing*, *Minnesota*, or *MSP*).  *Id.*  But that is of no consequence because Defendants are not asking to consolidate the Scheduled Actions *with* the New Jersey actions.  Rather, if the Panel decides that consolidation is appropriate, the judge to preside over those proceedings should be one of the New Jersey judges with extensive insulin pricing litigation experience.  Moreover, the PBMs (and Manufacturers) *are* defendants in one of the New Jersey actions (*Direct Purchaser*), and there is extensive overlap in allegations there too.  *See Direct Purchaser*, ECF No. 112 ¶¶ 20-36, 101.  In any event, the Panel routinely consolidates cases where there is not a complete overlap between all parties.  *See, e.g., In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination*

17

*Prod. Liab. Litig.*, 363 F. Supp. 3d 1378, 1381 (J.P.M.L. 2019) (consolidating actions involving the same drug "regardless of whether the alleged supplier of the [drug] was ZHP, Mylan, Hetero Labs Limited, or some other entity"); *In re Customs & Tax Admin. of the Kingdom of Den. (SKAT) Tax Refund Scheme Litig.*, 338 F. Supp. 3d 1347, 1349 n.2 (J.P.M.L. 2018) (rejecting request to exclude actions with different defendants because party-specific issues "are essentially case management concerns that transferee judges routinely … address").

Second, Plaintiffs point to the Court's denial of a prior motion to consolidate *Insulin Pricing* with *Direct Purchaser*. Br. at 11. But that decision has no bearing on the present motion either. There, all of the defendants and one set of plaintiffs opposed coordination. *In re Insulin Pricing*, 2020 WL 5642002, at *5 (D.N.J. Sept. 22, 2020).[8]

Finally, Plaintiffs argue that New Jersey is an inappropriate forum because certain of the New Jersey actions are more procedurally advanced than the Actions. Br. at 11-13. This, too, is irrelevant.[9] Again, Manufacturers merely submit that *if* the Panel deems consolidation appropriate—and it should not for all the reasons detailed above—it should *transfer* the proceedings to a district that has extensive experience with the same allegations and parties at issue in the Actions. Prior judicial experience with overlapping facts and parties is an important consideration in determining an appropriate transferee district. *In re Seroquel Prod. Liab. Litig.*, 447 F. Supp. 2d 1376, 1379 (J.P.M.L. 2006) (transferring litigation to "judge with prior experience overseeing [] litigation" involving the at-issue product); *see also In re Taxotere (Docetaxel) Eye*

---

[8] In fact, to the extent that this consolidation decision is relevant at all, it simply reinforces that consolidation is not necessary where, as here, "informal coordination" is "sufficient to prevent duplicative discovery and ensure coordinated pretrial proceedings." *Id.* at *6. Nor does it matter that *Insulin Pricing* plaintiffs "specifically sought to exclude" PBM defendants from their case (*id.*), since Plaintiffs have *not* "sought to exclude" PBM defendants from the Actions.

[9] Discovery has only just begun in *Direct Purchaser* and is ongoing in *Minnesota* and *MSP*.

*Inj. Prod. Liab. Litig.*, 584 F. Supp. 3d 1378, 1379 (J.P.M.L. 2022) (judge presiding over case "involv[ing] some of the same parties and counsel" was "in a unique position to guide" consolidated proceedings). This is especially true where there are already "[s]everal multi-product, multi-defendant actions" pending involving the same subject and defendants, as centralization in a single district "will avoid the complications of having these multi-product, multi-defendant cases pending in more than one district." *In re Cook Med., Inc.*, 949 F. Supp. 2d 1373, 1375-76 (J.P.M.L. 2013). The significant prior experience of the District of New Jersey in presiding over factually analogous cases trumps the fact that certain of the cases are in different procedural postures. Indeed, the Panel has based prior transfer decisions on overlapping judicial experience in the transferee district even where the "similar action against [the defendant] [was] in its final stages." *In re Staples, Inc.*, 609 F. Supp. 2d 1377, 1378 (J.P.M.L. 2009).

Accordingly, to the extent the Panel deems centralization of the Actions appropriate, it should transfer any consolidated proceedings to the District of New Jersey.[10]

## CONCLUSION

Plaintiffs fail to identify any present or future problem requiring § 1407 transfer. The same counsel, working across the same cases, can continue their collaborative efforts to move these matters to resolution. There is no need to burden the judiciary to create a new MDL for five cases, simply because Plaintiffs' counsel prefer to litigate in their own backyard.

---

[10] In the alternative, if the Panel concludes these cases should be consolidated but not in the District of New Jersey, Manufacturers do not oppose consolidation in the District of Kansas.

Dated: June 2, 2023            Respectfully submitted,

/s/ Diana M. Watral
Diana M. Watral, P.C.
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
Fax: (312) 862-2200
diana.watral@kirkland.com

*Counsel for Defendant Eli Lilly and Company*

/s/ Neal Potischman
Neal Potischman
**DAVIS POLK & WARDWELL, LLP**
1600 El Camino Real
Menlo Park, CA 94025
Tel: (650) 752-2000
Fax: (650) 752-2111
neal.potischman@davispolk.com

*Counsel for Defendant Novo Nordisk, Inc.*

/s/ William D. Coglianese
William D. Coglianese
**JONES DAY**
51 Louisiana N.W.
Washington, D.C. 20001
Tel: (202) 879-3939
Fax: (202) 626-1700
wcoglianese@jonesday.com

*Counsel for Defendant Sanofi-Aventis U.S., LLC*