## BEFORE THE UNITED STATES JUDICIAL PANEL

## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| **IN RE INSULIN PRICING LITIGATION** | MDL No. 3080<br><br>This Document Relates to: *The People of the State of California v. Eli Lilly & Co., et al.* Case No. 2:23-cv-01929-SPG-SK (C.D. Cal.) |

## INTERESTED PARTY RESPONSE OF
## THE PEOPLE OF THE STATE OF CALIFORNIA

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

BACKGROUND ....................................................................................................... 1

I.    The People's Action Against the Manufacturer and PBM Defendants ................................................................................... 1

II.   The Mississippi, Arkansas, Kansas, Illinois, and Montana Attorneys General's Motion ...................................................... 3

ARGUMENT ........................................................................................................... 4

I.    A Decision on Whether to Include the People's Action in a MDL Should Be Deferred Until the Appeal of the Order Granting the People's Motion to Remand Is Resolved .................................. 5

II.   If a MDL Is Created, the People's Action Should Not Be Included .......... 6

III.  The Central District of California Is the Most Appropriate District for Centralization ................................................................... 9

CONCLUSION ......................................................................................................... 14

# TABLE OF AUTHORITIES

Page

**CASES**

*Darisse v. Nest Labs, Inc.*
No. 5:14-CV-01363-BLF, 2016 WL 4385849 (N.D. Cal. Aug. 15, 2016) ........................................................................................................8

*In re Aggrenox Antitrust Litig.*
11 F. Supp. 3d 1342 (J.P.M.L. 2014) ...........................................................12

*In re Baby Food Mktg., Sales Practices & Prod. Liab. Litig.*
544 F. Supp. 3d 1375 (J.P.M.L. 2021) ...........................................................7

*In re Covidien Hernia Mesh Prod. Liab. Litig.*
481 F. Supp. 3d 1348 (J.P.M.L. 2020) ...........................................................7

*In re 'East of the Rockies' Concrete Pipe*
302 F. Supp. 244 (J.P.M.L. 1969) ...................................................................5

*In re: Effexor (Venlafaxine Hydrochloride) Prods. Liab. Litig.*
959 F. Supp. 2d 1359 (J.P.M.L. 2013) .........................................................13

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*
268 F. Supp. 3d 1356 (J.P.M.L. 2017) .........................................................13

*In re Express Scripts Holding Co. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*
273 F. Supp. 3d 1369 (J.P.M.L. 2017) ...........................................................8

*In re Hawaiian & Guamanian Cabotage Antitrust Litig.*
571 F. Supp. 2d 1379 (J.P.M.L. 2008) .........................................................11

*In re Hyundai & Kia Fuel Econ. Litig.*
923 F. Supp. 2d 1364 (J.P.M.L. 2013) .........................................................14

*In re Immunex Corp. Average Wholesale Price Litig.*
201 F. Supp. 2d 1378 (J.P.M.L. 2002) .........................................................12

*In re Jamster Mkt. Litig.*
427 F. Supp. 2d 1366 (2006) .........................................................................10

ii

# TABLE OF AUTHORITIES
## (continued)

Page

*In re Magic Marker Sec. Litig.*
470 F. Supp. 862 (J.P.M.L. 1979)....................................................................11

*In re Motor Vehicle Air Pollution Control Equip.*
311 F. Supp. 1349 (J.P.M.L. 1970)..................................................................6

*In re Nat. Student Mktg. Litig.*
368 F. Supp. 1311 (J.P.M.L. 1972)..................................................................6

*In re Pharmacy Benefit Managers*
452 F. Supp. 2d 1352 (J.P.M.L. 2006)............................................................12

*In re Pharmastem Therapeutics, Inc., Patent Litig.*
360 F. Supp. 2d 1362 (J.P.M.L. 2005)............................................................13

*In re Plavix Prod. Liab. Litig.*
829 F. Supp. 2d 1378 (J.P.M.L. 2011)............................................................11

*In re Preferential Drug Prods. Pricing Antitrust Litig.*
429 F. Supp. 1027 (J.P.M.L. 1977)..................................................................9

*In re: Prospect Mortg., LLC, Fair Labor Standards Act (FLSA) & Wage &*
*Hour Litig.*
987 F. Supp. 2d 1383 (J.P.M.L. 2013)............................................................7

*In re Regions Bank ATM Fee Notice Litig.*
763 F. Supp. 2d 1372 (J.P.M.L. 2011)............................................................14

*In re U.S. Postal Servs. Next Generation Delivery Vehicle Acquisitions*
*Program Record of Decision Litig.*
--- F. Supp. 3d ---- (J.P.M.L. Oct. 7, 2022)....................................................6

*In re Veeco Instruments Inc. Sec. Litig.*
387 F. Supp. 2d 1365 (J.P.M.L. 2005)............................................................5

*In re Viagra Prods. Liability Litig.*
414 F. Supp. 2d 1357 (2006) ..........................................................................9

*In re Wayne Farms LLC Fair Labor Standards Act Litig.*
528 F. Supp. 2d 1355 (J.P.M.L. 2007)............................................................14

# TABLE OF AUTHORITIES
## (continued)

Page

*In re Wells Fargo Auto Ins. Mktg. & Sales Practices Litig.*
　273 F. Supp. 3d 1383 (J.P.M.L. 2017)................................................................10

*In re Zicam Cold Remedy Mktg. & Sales Pracs. Litig.*
　655 F. Supp. 2d 1371 (J.P.M.L. 2009).............................................................8

*Mary R. v. B. & R. Corp.*
　149 Cal. App. 3d 308 (1983) ........................................................................8

*Peck v. Jayco, Inc.*
　No. CV 22-5762, --- F. Supp. 3d ---- (D.N.J. Mar. 30, 2023) ...................10

*People v. Sarpas*
　225 Cal. App. 4th 1539 (2014) .....................................................................8

STATUTES

28 U.S.C.
　§ 1404...................................................................................................10
　§ 1407.....................................................................................................5
　§ 1442.....................................................................................................3

California Business and Professions Code § 17200 ...................................1, 2, 8

COURT RULES

Federal Rule of Civil Procedure 12 ..................................................................14

OTHER AUTHORITIES

Federal Court Management Statistics, March 31, 2023,
　https://www.uscourts.gov/statistics/ table/na/federal-court-
　management-statistics/2023/03/31- ...............................................................9

Pending MDLs, https://www.jpml.uscourts.gov/pending-mdls-0 .....................9

SECONDARY SOURCES

David F. Herr, Multidistrict Lit. Man. (May 2023 Update) .............................. 5, 11

iv

## TABLE OF EXHIBITS

**EXHIBIT**

The People's Complaint ………………………………………………………………… A

C.D. Cal. Docket…………………………..…………….…………………………… B

C.D. Cal. Order on Plaintiff's Motion to Remand (ECF 109) ………..………..………..…... C

C.D. Cal. Joint Rule 26(f) Report (ECF 56) …………….………..………………..………... D

C.D. Cal. Amended Joint Rule 26(f) Report (ECF 96-1) ………..…………..…………..…... E

Los Angeles World Airports | Just the Facts ……………..…………………….....…... F

Downtown LA | Hotels ……………….…..……………….…..……………….....…... G

Sanofi R&D Jobs | California …………………………..…………………….....…... H

D.N.J. Class Action, Transcript Re: Case Management Conference (ECF No. 336) …...…….... I

## INTRODUCTION

The People of the State of California (People) respectfully submit, as an interested party, this response (Response) to movant States of Arkansas, Illinois, Kansas, Mississippi, and Montana's Motion for Transfer of Actions to the Southern District of Mississippi Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Proceedings (Motion). Through this Response, the People request the Panel *defer* deciding whether to include the People's action in a MDL until *after* the Ninth Circuit resolves Defendants Express Scripts, Inc.'s and CaremarkPCS Health, LLC's appeals of the Central District of California order granting the People's motion to remand their action to state court. If the Panel nevertheless addresses centralization of the People's action with the other actions at the July 27, 2023 Panel Hearing, the Panel should decline to include the People's action in a MDL. All the Parties to the People's action oppose centralization and are open to informal coordination with other actions. Also, the risk of contradictory pretrial rulings with Movants' actions is minimal since Movants are not asserting violations of California law nor seeking to protect Californians. If centralization is ordered, the most appropriate jurisdiction for centralization is the Central District of California, or in the alternative, the Southern District of Mississippi.

## BACKGROUND

## I.    THE PEOPLE'S ACTION AGAINST THE MANUFACTURER AND PBM DEFENDANTS

On January 12, 2023, the People filed suit in Los Angeles County Superior Court against seven defendants. The People sued Manufacturer Defendants Eli Lilly and Company, Novo Nordisk Inc., Sanofi-Aventis U.S. LLC, and pharmacy benefit manager (PBM) Defendants Express Scripts, Inc., CaremarkPCS Health, LLC, CVS Health Corp., and OptumRx, Inc.

The Complaint alleges the Manufacturer and PBM Defendants engaged in unlawful, unfair, and fraudulent acts and practices in violation of California's Unfair Competition Law,

Business and Professions Code § 17200 (UCL), to artificially raise the price of analog insulin. In particular, the People allege the Manufacturers and PBMs conspired to repeatedly raise the list price of analog insulin, in lockstep, to artificially high levels as facilitated by the rebate practices of the PBMs described below. (Ex. A (Compl. ¶¶ 6–9, 129–167).) For example, the Manufacturers raised their analog insulin prices by over 600% in the past twenty years. (*Id.* at ¶ 129.) The Manufacturers publish these inflated prices in databases administered by third-party entities. (*Id.* at ¶ 104.)

In addition, the People allege the Manufacturers provided substantial secret rebates—eventually representing over 70% of the list price in some instances—to the PBMs. (*Id.* ¶¶ 7, 147–158.) The People allege the PBMs were able to demand pay-to-play secret rebate payments due to their market share from off-the-shelf, standard formularies they provide to, *e.g.*, their commercial health insurance clients even as list prices increased. (*Id.* ¶¶ 8, 119–122.)

The People further allege both the Manufacturer and PBM Defendants made misleading statements in support of their efforts to inflate and profit from analog insulin's inflated price. (*Id.* ¶¶ 10, 184–205.)

As a result of this (and related) conduct, the People allege that Californians have paid artificially and unconscionably high prices for insulin, particularly those who are uninsured, underinsured, or have high-deductible insurance plans. (*Id*. ¶¶ 208–214.) The People further allege analog insulin is so expensive that many diabetics struggle to afford it, even when covered by health insurance. (*Id*. ¶¶ 215–224.) The People assert a claim for relief under all three prongs (unlawful, unfair, and fraudulent) of the UCL. The People also assert a claim for unjust enrichment. The People seek restitution, civil penalties, and injunctive relief, among other relief.

On March 15, 2023, Express Scripts (ESI) removed the action to the United States District Court for the Central District of California under the federal officer removal statute, 28 U.S.C. § 1442. (Ex. B (C.D. Cal. Docket, ESI Removal, ECF No. 1).) On the same day, Caremark filed a Supplemental Notice of Removal, also invoking the federal officer removal statute. (Ex. B (C.D. Cal. Docket, Caremark Removal, ECF No. 5).)

The People moved to remand the action back to state court on April 14, 2023. (Ex. B (C.D. Cal. Docket, Mot. to Remand, ECF No. 78).) The motion was opposed by Express Scripts and Caremark. (Ex. B (C.D. Cal. Docket, Opps. to Remand, ECF Nos. 93 & 94).) The Honorable Sherilyn Peace Garnett held oral argument on June 7, 2023. (Ex. B (C.D. Cal. Docket, Minute Order, ECF 106).) On June 28, 2023, the Central District of California granted the People's motion. (Ex. C (C.D. Cal. Order Granting Plaintiff's Motion to Remand, ECF 109).)

Caremark and ESI appealed on July 5, 2023 and July 6, 2023, respectively. (Ex. B (C.D. Cal. Docket, Notice of Appeal, ECF 113, 118).) Caremark filed an *ex parte* application to stay remand pending appeal that the People oppose. (Ex. B (C.D. Cal. Docket, ECF 112, 119).)

## II.   THE MISSISSIPPI, ARKANSAS, KANSAS, ILLINOIS, AND MONTANA ATTORNEYS GENERAL'S MOTION

Movants filed their Motion with the Panel on May 9, 2023, seeking centralization in the Southern District of Mississippi. (MDL No. 3080, ECF 1-1.) Movants claimed centralization of their actions is appropriate because it will conserve discovery resources and avoid conflicting pre-trial rulings. (*Id.* at 2.) Movants did not seek centralization of the People's action, or centralization of the actions by the Louisiana Attorney General or the Secretary of Justice of Puerto Rico. (*Id.* at 1 n.1.) Like the People, the Louisiana Attorney General and the Secretary of Justice of Puerto Rico filed motions to remand their respective actions to state or commonwealth court. (*Id.*)

The PBM Defendants opposed centralization, but in the alternative requested centralization in the District of Kansas. (MDL No. 3080, ECF 36.) The PBM Defendants also sought to include the People's action in the MDL if the Panel decides to grant the Motion. (*Id.*) The Manufacturer Defendants opposed centralization, but in the alternative requested centralization in the District of New Jersey. (MDL No. 3080, ECF 37.)

Class action plaintiffs, who have an action against the Manufacturer Defendants related to the price of insulin that has been pending in the District of New Jersey since 2017, filed an Interested Party Response. They opposed centralization but in the alternative suggested centralization in the District of New Jersey. (MDL No. 3080, ECF 34.)

Two counties that brought actions on their own behalf as purchasers of insulin filed an Interested Party Response that (1) supported creation of a MDL, (2) sought to have their actions included in any MDL the Panel creates, and (3) supported centralization in the District of New Jersey. (MDL No. 3080, ECF 35.)

On June 15, 2023, the Panel identified the People's action, as well as the Louisiana and Puerto Rico actions, and an action by Jackson County, Missouri, as potential related actions. (MDL No. 3080, ECF 43.) Louisiana, Puerto Rico, and Jackson County oppose centralization of their actions. (MDL No. 3080, ECF 53, 54, and 64.) In the alternative, Jackson County proposes centralization in the Western District of Missouri. (MDL No. 3080, ECF 68.)

On July 3, 2023, an additional set of plaintiffs identified an action they filed that same day as a potential tag-along, and requested the District of Puerto Rico as a potential jurisdiction for centralization. (MDL No. 3080, ECF 61, 62-4.)

## ARGUMENT

The Panel is authorized to transfer "civil actions involving one or more common questions of fact" that are pending in different districts to a single district for coordinated pretrial

4

proceedings if the transfer "will be for the convenience of parties and witnesses and will promote

the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). With respect to the choice of

transferee district, the Panel has articulated numerous factors, including caseload statistics of the

potential transferee districts. *In re Veeco Instruments Inc. Sec. Litig.,* 387 F. Supp. 2d 1365, 1366

(J.P.M.L. 2005). Here, it would not promote the just and efficient conduct of the People's action,

nor support the convenience of witnesses and parties, to include the People's action in a MDL at

this time, or ever. Finally, regardless of whether the People's action is included in the MDL, the

MDL should proceed in the Central District of California, or in the alterative, the Southern

District of Mississippi.

## I.  A DECISION ON WHETHER TO INCLUDE THE PEOPLE'S ACTION IN A MDL SHOULD BE DEFERRED UNTIL THE APPEAL OF THE ORDER GRANTING THE PEOPLE'S MOTION TO REMAND IS RESOLVED

The People respectfully request the Panel *defer* considering the transfer of the People's

Action until the Ninth Circuit Court of Appeals resolves the appeals regarding the Central

District of California ruling on the People's motion to remand.

If the Ninth Circuit affirms the Central District of California's order, and the Central

District transmits the remand order to the Los Angeles County Superior Court, there will be no

action left pending in federal district court for the Panel to transfer. *See* David F. Herr,

Multidistrict Lit. Man. § 3:13, Limitations on Panel's power—No power over state court cases

(May 2023 Update) ("[T]he Panel is unable to implement transfer of [] state actions."). Similarly,

if the Central District refuses to stay mailing of the remand order during the pendency of the

appeal, there will be no action left pending in federal district court for the Panel to transfer. (*Id.*)

Alternatively, if the matter is stayed pending appeal of the remand order, transfer of this

action should be deferred until resolution of the appeal. *In re 'East of the Rockies' Concrete*

*Pipe*, 302 F. Supp. 244, 249 (J.P.M.L. 1969) ("Until these class action issues are no longer

subject to early appellate review in the Second Circuit and no longer subject to review by extraordinary writ, including certiorari, ruling on the motion of transfer of these cases pending in the Southern District of New York should be deferred."). Under those circumstances, transfer of the action would not be appropriate because it would be unclear when "pretrial proceedings in the action[] will commence" and if they will commence in state or federal court. *See In re U.S. Postal Servs. Next Generation Delivery Vehicle Acquisitions Program Record of Decision Litig.,* --- F. Supp. 3d ----, 2022 WL 5408780, at *1 (J.P.M.L. Oct. 7, 2022) (denying transfer of actions in part due to fact that there were "uncertainties about when and how the litigation may progress" due to potential upcoming stays of the actions).[1]

## II.   IF A MDL IS CREATED, THE PEOPLE'S ACTION SHOULD NOT BE INCLUDED

If the Panel declines to defer considering the People's action for centralization, the People respectfully submit that centralization of their action would not be appropriate. Not one party to the People's action support the inclusion of the Action in a MDL. The People oppose the inclusion of their action in a MDL, and each defendant opposes centralization. (MDL No. 3080, ECF No. 36 (PBM Defendants oppose MDL); ECF No. 37 (Manufacturer Defendants oppose MDL).) The PBM Defendants only support the inclusion of the People's action in a MDL if a MDL is created over their objection. (ECF No. 36 at 8.) This supports excluding the People's action from any MDL, if a MDL is created.

---

[1] *See also In re Nat. Student Mktg. Litig.,* 368 F. Supp. 1311, 1318 (J.P.M.L. 1972) (severing claims against one defendant that were subject to appeal and then declining to transfer such claims); *In re Motor Vehicle Air Pollution Control Equip.*, 311 F. Supp. 1349, 1349-50 (J.P.M.L. 1970) (acknowledging Panel deferred decision on transfer motion until resolution of an appeal in one matter).

Moreover, the parties to the People's action have expressed support for informal coordination of discovery proceedings with other State Attorneys General (State AG). The People stated in the Joint Rule 26(f) Report:

> The People acknowledge that there are certain other matters pending regarding the price of insulin. There are differences in the law at issue, the parties in the litigations, the identity of the alleged injured parties, and the status of the litigation. Thus, coordination of discovery in all referenced actions is not appropriate. Nevertheless, the People propose a trial date in mid-2025 instead of one year as suggested in the Court's Schedule of Pretrial and Trial Dates Worksheet in order to allow for the potential coordination of overlapping discovery, to the extent it is appropriate, feasible, and specified, with the insulin actions filed by other Attorneys General.

(Ex. D (C.D. Cal. Joint Rule 26(f) Report at 17-18).) The Defendants in the People's Action responded: "To the extent practicable, Defendants contend that the parties should strive to avoid duplicative discovery, including depositions, taken in these other actions." (*Id.* at 19.) The Panel supports this form of informal discovery coordination over mandated transfer. *See In re Baby Food Mktg., Sales Practices & Prod. Liab. Litig.,* 544 F. Supp. 3d 1375, 1378 (J.P.M.L. 2021) ("We believe it is better to allow the parties' attempts to self-organize play out before centralizing any part of this litigation."); *In re Covidien Hernia Mesh Prod. Liab. Litig.,* 481 F. Supp. 3d 1348, 1349 (J.P.M.L. 2020) ("The presence of common counsel here should facilitate informal coordination of this relatively small number of actions.").[2]

In addition, there is minimal risk of inconsistent pretrial rulings between the People's action and the other State AG actions. The State AG actions are not class actions. *See In re: Prospect Mortg., LLC, Fair Labor Standards Act (FLSA) & Wage & Hour Litig.,* 987 F. Supp.

---

[2] The discovery in the People's action goes beyond the discovery Movants will seek. (*Compare* MDL No. 3080, ECF 1-1 at 8 (discovery in Movants' action), *with* Ex. D (C.D. Cal. Joint Rule 26(f) Report at 11-12) (summarizing discovery People intend to seek).)

2d 1383, 1383 (J.P.M.L. 2013) (denying transfer in part because "[t]hese are not class actions, so there is no risk of conflicting class certification rulings."). Further, no other State AG action is seeking to protect the interests of Californians. *See In re Express Scripts Holding Co. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.,* 273 F. Supp. 3d 1369, 1371 (J.P.M.L. 2017) (declining to centralize matters in part because the classes of persons to be protected by the suits—persons with ERISA plans and claims not implicating ERISA—were different: "Given the limited number of involved counsel and actions, and the presence of significant non-overlapping issues in one action, informal coordination of discovery and pretrial motions is preferable to centralization."). Finally, no other State AG action is proceeding under California law, which is unique among consumer protection laws. The Ninth Circuit recognizes the UCL differs from statutes of other states. *See, e.g., Darisse v. Nest Labs, Inc.,* No. 5:14-CV-01363-BLF, 2016 WL 4385849, at *9 (N.D. Cal. Aug. 15, 2016) (denying certification of nationwide class under UCL due to differences in laws of other states) (citing *Mazza v. Am. Honda Motor Co., Inc.*, 666 F. 3d 581 (9th Cir. 2012)). The uniqueness of California law suggests there is minimal risk of conflicting pretrial decisions in the People's action and the other State AG actions. This supports excluding the People's action from any MDL if a MDL is created. *See In re Zicam Cold Remedy Mktg. & Sales Pracs. Litig.,* 655 F. Supp. 2d 1371, 1373 (J.P.M.L. 2009) (declining to include in MDL case whose factual overlap with centralized actions was "insufficient to warrant transfer at the present time").[3]

---

[3] The uniqueness of California's UCL is even more profound in law enforcement actions, since the People need not prove reliance nor actual damages to recover civil penalties, and affirmative defenses that may be available in private litigation are unavailable. *See, e.g., People v. Sarpas,* 225 Cal. App. 4th 1539, 1548 (2014) ("Restitution under the UCL . . . may be ordered without individualized proof of harm.") (citations omitted); *Mary R. v. B. & R. Corp*., 149 Cal. App. 3d 308, 315-16 (1983) (stating equitable defenses may not apply if they "would result in the nullification of a strong rule of policy adopted for the benefit of the public.") (citation omitted).

### III.   THE CENTRAL DISTRICT OF CALIFORNIA IS THE MOST APPROPRIATE DISTRICT FOR CENTRALIZATION

Substantive arguments for four jurisdictions have been put forward for centralization: the Southern District of Mississippi, the District of New Jersey, the District of Kansas, and the Western District of Missouri. (ECFs 1-1, 34-38, 68.)[4] In the event centralization is ordered, the most appropriate forum for centralization is instead the Central District of California.

Significant for the determination of the transferee district are the time to trial for civil matters, the percent of civil cases that are over three years old, and the current number of MDL proceedings in the District.

| Civil Cases[5] | C.D. Cal. | S.D. Miss. | D. Kan. | D.N.J. | W.D. Mo. |
|---|---|---|---|---|---|
| Median time (months) between filing & trial | 25.8 | 32.6 | 30.4 | 50.1 | 22.3 |
| % civil cases over 3 years old | 9.5 | 5.5 | 12.3 | 45.9 | 8.7 |
| Number of pending MDLs[6] | 5 | 0 | 1 | 11 | 5 |
| Number of included actions in MDLs | 314 | 0 | 1 | 54,778 | 96 |

Of the districts that are home to at least one defendant (C.D. Cal. and D.N.J), the Central District of California is by far the fastest median time to trial. *In re Preferential Drug Prods. Pricing Antitrust Litig.*, 429 F. Supp. 1027, 1029 (J.P.M.L. 1977) (centralization proper in district that will reach resolution most expeditiously). It has the capacity and experience to manage a MDL. *In re Viagra Prods. Liability Litig.*, 414 F. Supp. 2d 1357, 1358 (2006) (in

---

[4] The District of Puerto Rico has been proposed, but no substantive arguments have yet been made as to why it would be an appropriate venue. (MDL No. 3080, 62-4.) It would not be, for reasons similar to why transfer to the District of Kansas would be inappropriate. No defendant is headquartered there and there are no allegations of unlawful conduct being directed from there.

[5] Federal Court Management Statistics, March 31, 2023, https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2023/03/31-3.

[6] Pending MDLs, https://www.jpml.uscourts.gov/pending-mdls-0 (as of June 15, 2023).

deciding among several potential transferee districts, the Panel selected a district with "a jurist experienced in complex multidistrict litigation" and "with the capacity to handle this litigation"); *In re Jamster Mkt. Litig.*, 427 F. Supp. 2d 1366, 1368 (2006) (transferring to district that offered "an accessible metropolitan location"). It has a large international airport (Los Angeles International Airport) and many accommodations near the courthouse.[7] And, significantly, Defendant OptumRx is in the Central District of California. *In re Wells Fargo Auto Ins. Mktg. & Sales Practices Litig.,* 273 F. Supp. 3d 1383, 1384 (J.P.M.L. 2017) (transferring actions to Central District of California because witnesses were there).[8]

In contrast, the District of New Jersey is an inappropriate venue for transfer of the State AG actions because of the "great congestion" the court currently faces. *See Peck v. Jayco, Inc., No. CV 22-5762 (RBK/SAK), --- F. Supp. 3d ----, 2023 WL 2706806, at *4 (D.N.J. Mar. 30, 2023)* (acknowledging congestion as a factor for transferring action from the District of New Jersey to another district pursuant to 28 U.S.C. § 1404). The "great congestion" in the District of New Jersey is illustrated by the fact that the consumer class action has been pending for over six years but does not yet have a trial date, no summary judgment briefs have been filed, and there is no ruling on plaintiffs' motion for class certification. (MDL No. 3080, ECF 34 at 2.) It is further illustrated by the fact that the court appointed a discovery master in part because there is a

---

[7] "During calendar year 2019, on overage 693 daily nonstop flights to 113 U.S. cities and 1,205 weekly nonstop flights to 91 cities in 47 countries on 72 commercial air carriers operate at LAX." https://www.lawa.org/history/lax-history/just-the-facts (last visited July 6, 2023) (attached as Ex. F). Downtown Los Angeles has numerous hotels, for a variety of budgets. https://downtownla.com/maps/hospitality/hotels (last visited July 6, 2023) (attached as Ex. G).

[8] Each Manufacturer Defendant has a presence in California. (Ex. A (Compl., ¶20 (Eli Lilly: San Diego), ¶29 (Novo Nordisk: San Francisco Bay Area)); https://jobs.sanofi.us/category/r-and-d-jobs/507-18104/56275/1 (last visited June 27, 2023) (Sanofi jobs in San Francisco Bay Area) (attached as Ex. H).

"judicial crisis" in the district. (Ex. I (D.N.J. Consumer Class Action Transcript of Hearing Re: Case Management Conference at 11).)

Further undermining transfer to the District of New Jersey is the fact the June 15, 2023 Report on pending MDLs indicates the District Judge handling the insulin consumer class action (Judge Brian R. Martinotti) is also overseeing two large MDLs (MDL No. 2921 and MDL No. 2973) containing a total of over 3,000 actions. *See In re Hawaiian & Guamanian Cabotage Antitrust Litig.,* 571 F. Supp. 2d 1379, 1380 (J.P.M.L. 2008) (declining to transfer to a judge already handling two MDLs).

The existence of other pending matters related to the price of insulin in the District of New Jersey is not sufficient to overcome concerns about docket congestion in the District of New Jersey. Because of the advanced stage of the actions in New Jersey, discovery proceedings cannot be coordinated with the State AG actions' discovery. *See In re Plavix Prod. Liab. Litig.,* 829 F. Supp. 2d 1378, 1378 (J.P.M.L. 2011). Transferring the State AG actions to New Jersey risks slowing down the New Jersey proceedings further, slowing down the State AG actions, and provides no benefits to the parties in any action. *See In re Magic Marker Sec. Litig.,* 470 F. Supp. 862, 865 (J.P.M.L. 1979) (finding transfer inappropriate due to "the advanced stage of pretrial proceedings" of actions in transferee court since Panel was convinced centralization would "disrupt the orderly progress which is being made in those actions [in transferor court] and would result in no significant benefits to the litigation as a whole").

Nor does the possibility of the People's action being sent to Los Angeles Superior Court undermine sending this action to the Central District of California. This is because "[t]he Panel has considered the potential for coordination of pretrial proceedings, particularly discovery, between the transferred federal court actions and related state court actions." *See* David F. Herr,

Multidistrict Lit. Man. § 6:13, Factors articulated by the Panel in selecting transferee district—Coordination with state court proceedings (May 2023 Update); *see also In re Internal Revenue Service § 1031 Tax Deferred Exchange Litig.*, 528 F. Supp. 2d 1343, 1344 (J.P.M.L. 2007) (transfer to venue with enhanced "potential for coordination between the state and federal courts").

The District of Kansas is an even less appropriate transfer venue than the District of New Jersey. No party has its headquarters in Kansas and there are no allegations of unlawful conduct being directed from there. This means centralization in that district would be inconvenient for the parties, witnesses, and evidence. *See In re Aggrenox Antitrust Litig.*, 11 F. Supp. 3d 1342, 1343 (J.P.M.L. 2014) (citing convenience and accessibility for the parties and witnesses as important factors when choosing transferee forum). The fact Kansas is in the Midwest is not sufficient to eclipse the benefits provided by Los Angeles. Indeed, the Panel has transferred MDLs involving PBMs and drug pricing to coastal cities instead of a state in the Midwest when, like here, the coastal venue has a stronger basis for hosting the MDL. *See, e.g., In re Pharmacy Benefit Managers,* 452 F. Supp. 2d 1352, 1354 (J.P.M.L. 2006) (transferring actions involving pharmacy benefit managers and drug pricing to Pennsylvania instead of Illinois); *In re Immunex Corp. Average Wholesale Price Litig.,* 201 F. Supp. 2d 1378, 1381 (J.P.M.L. 2002) (transferring actions involving manufacturers and drug pricing to Massachusetts instead of Illinois).

The primary reason the PBM Defendants propose the District of Kansas for the State AG actions is because they claim it has "experience with another MDL involving similar allegations" regarding epinephrine auto-injectors. (ECF 36 at 11-12, referencing MDL No. 2785.) Not so. With respect to the epinephrine MDL: there is limited overlap in parties;[9] the principle legal

---

[9] While Sanofi was one plaintiff in MDL No. 2785, it is a defendant in the State AG actions.

theories are different; and there is no overlap in underlying facts. Although MDL No. 2785 did include allegations of "excessive rebates" the product at issue was different (epinephrine vs. insulin), and the rebate allegation was only one component of a multifaceted scheme involving allegations of "anticompetitive conduct including . . . engaging in a 'hard switch' and selling EpiPens only in packs of two; entering into discount agreements with schools . . . ; securing multiple overlapping patents on minor changes to the EpiPen and engaging in 'sham' patent litigation to forestall generic competition." *See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, 268 F. Supp. 3d 1356, 1359 (J.P.M.L. 2017). Those factual allegations share little resemblance to Movant's actions, in which they challenge a conspiracy between PBMs and insulin manufacturers to "artificially inflate the price of insulin." (MDL No. 3080, ECF 1-1 at 2.)

The lack of overlap in defendants between the epinephrine MDL (No. 2785) and the Movants' actions, and the fact the epinephrine MDL was closed on July 13, 2022, makes the instant scenario markedly different than the situations presented in the cases cited by the PBM Defendants. (ECF 36, quoting *In re: Effexor (Venlafaxine Hydrochloride) Prods. Liab. Litig.*, 959 F. Supp. 2d 1359, 1360 (J.P.M.L. 2013) and *In re Pharmastem Therapeutics, Inc., Patent Litig.*, 360 F. Supp. 2d 1362, 1364 (J.P.M.L. 2005).) The Panel transferred the Effexor actions to the judge overseeing the *still-pending* Zoloft MDL because there was an overlapping defendant and the alleged injury from the drugs (birth defects) was the same. 959 F. Supp. 2d at 1360. The Pharmastem actions related to patents, and the Panel transferred the actions to the same judge overseeing a different action regarding the same patents that, although was on appeal, might return to the district court. 360 F. Supp. 2d at 1364.

The Western District of Missouri has the same drawbacks as the District of Kansas in that no party has its headquarters in the district and there are no allegations of unlawful conduct being directed from there.

As an alternative to the Central District of California, the Southern District of Mississippi would be an appropriate district for transfer. The first of the State AG actions involving PBMs was filed in the Southern District of Mississippi and that is the most procedurally advanced State AG action since it is the only court where a decision has been made on a challenge to the pleadings under Federal Rule of Civil Procedure 12(b). *See In re Hyundai & Kia Fuel Econ. Litig.,* 923 F. Supp. 2d 1364, 1366 (J.P.M.L. 2013) (transferring actions to district overseeing first-filed and most advanced action). Additionally, the Southern District of Mississippi has experience with MDLs. The Panel has transferred actions to the Southern District of Mississippi in the past. *See, e.g., In re Regions Bank ATM Fee Notice Litig.,* 763 F. Supp. 2d 1372, 1373 (J.P.M.L. 2011) (transferring actions to the Southern District of Mississippi); *In re Wayne Farms LLC Fair Labor Standards Act Litig.,* 528 F. Supp. 2d 1355, 1356 (J.P.M.L. 2007) (same).[10]

## CONCLUSION

There is no reason to transfer the People's action for coordination with other State AG actions. It would serve the interests of no one, especially since the Central District of California granted the People's motion to remand and that order is now on appeal. The People respectfully request the Panel deny including the People's action in any MDL it creates. Regardless, if the Panel grants the Motion, the transferee district should be the Central District of California or, in the alternative, the Southern District of Mississippi.

---

[10] In the event the Panel orders centralization, the People request the Panel choose a different name for the matter so that it is different than the pending New Jersey consumer class action.

14

Dated:  July 7, 2023                              Respectfully submitted,

                                                  ROB BONTA
                                                  Attorney General of California
                                                  RENUKA GEORGE
                                                  Senior Assistant Attorney General
                                                  EMILIO VARANINI (Emilio.Varanini@doj.ca.gov)
                                                  Supervising Deputy Attorney General
                                                  DARCIE TILLY (Darcie.Tilly@doj.ca.gov)
                                                  Deputy Attorney General
                                                  600 West Broadway, Suite 1800
                                                  San Diego, CA 92101-3702
                                                  Telephone: (619) 738-9000
                                                  Facsimile: (619) 645-2012

                                                  /s/ *Darcie Tilly*
                                                  _____
                                                  Darcie Tilly
                                                  Deputy Attorney General
                                                  *Attorneys for the People of the State of California*

                                                  LAUREN ZWEIER (Lauren.Zweier@doj.ca.gov)
                                                  Deputy Attorney General
                                                  455 Golden Gate Ave., Suite 11000
                                                  San Francisco, CA 94102
                                                  Telephone: (415) 510-4400
                                                  Facsimile: (415) 703-5908

                                                  JOHN OHANESIAN (John.Ohanesian@doj.ca.gov)
                                                  Deputy Attorney General
                                                  300 South Spring Street, Suite 1702
                                                  Los Angeles, CA 90013-1230
                                                  Phone: (213) 269-6000
                                                  Facsimile: (916) 731-2119

                                                  RYAN MCEWAN (Ryan.McEwan@doj.ca.gov)
                                                  Deputy Attorney General
                                                  1300 "I" Street
                                                  Sacramento, CA 95814-2919
                                                  Phone: (916) 210-7548
                                                  Facsimile: (916) 327-2247

                                                  *Attorneys for the People of the State of*
                                                  *California*