**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION** | **MDL No. 3080** |

**INTERESTED PARTIES ELI LILLY AND COMPANY, SANOFI-AVENTIS U.S. LLC,
AND NOVO NORDISK INC.'S OPPOSITION TO DEFENDANTS CAREMARKPCS
HEALTH, L.L.C. AND OPTUMRX, INC.'S MOTION TO TRANSFER**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 2

I. THE HAWAI'I ACTION ............................................................................................. 2

II. THE INSULIN PRICING MDL AND CVS CAREMARK'S TRANSFER MOTION ..................................................................................................................... 3

ARGUMENT .......................................................................................................................... 5

I. TRANSFER OF HAWAI'I'S ACTION IS NEITHER WARRANTED NOR JUSTIFIED ................................................................................................................. 6

    A. Transferring Hawai'i's Action Would Significantly Broaden the MDL's Scope ........................................................................................................... 6

    B. Consolidation Would Exacerbate, Not Eliminate, Inefficiencies ......................... 10

II. ANY BENEFITS OF CONSOLIDATION COULD BE SERVED BY INFORMAL COORDINATION .............................................................................. 12

CONCLUSION ..................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bank of Am. Fraudulent Acct. Litig.*,
    2023 WL 8538726 (J.P.M.L. Dec. 6, 2023) .................................................................................5

*In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*,
    804 F. Supp. 2d 1376 (J.P.M.L. 2011) ................................................................................5, 13

*In re Cal. Wine Inorganic Arsenic Levels Prods. Liab. Litig.*,
    109 F. Supp. 3d 1362 (J.P.M.L. 2015) .....................................................................................12

*In re Covidien Hernia Mesh Prods. Liab. Litig.*,
    481 F. Supp. 3d 1348 (J.P.M.L. 2020) ................................................................................ passim

*In re Gap, Inc., COVID-19 Lease Payment Litig.*,
    492 F. Supp. 3d 1345 (J.P.M.L. 2020) ................................................................................ passim

*In re Gerber Probiotic Prods. Mktg. & Sales Litig.*,
    899 F. Supp. 2d 1378 (J.P.M.L. 2012) .....................................................................................12

*In re Insulin Pricing Litigation*,
    2023 WL 5065090 (J.P.M.L. Aug. 3, 2023) ........................................................................ passim

*In re Nat'l Grid Tax Gross-Up Adder Litig.*,
    2023 WL 2876091 (J.P.M.L. Apr. 10, 2023) ............................................................................12

*In re Nat'l Rifle Ass'n Bus. Expenditures Litig.*,
    521 F. Supp. 3d 1353 (J.P.M.L. 2021) ..................................................................................2, 9

*In re Nexium (Esomeprazole) Prods. Liab. Litig.*,
    908 F. Supp. 2d 1362 (J.P.M.L. 2012) ..................................................................................7, 9

*In re Student-Athlete Name & Likeness Litig.*,
    763 F. Supp. 2d 1379 (J.P.M.L. 2011) ................................................................................11, 13

*In re Testofen Mktg. & Sales Pracs. Litig.*,
    96 F. Supp. 3d 1371 (J.P.M.L. 2015) ................................................................................. passim

*In re Uber Techs., Inc., Wage & Hour Emp. Pracs. Litig.*,
    254 F. Supp. 3d 1376 (J.P.M.L. 2017) .....................................................................................12

**Statutes**

28 U.S.C. § 1407(a) .............................................................................................................1, 5, 10

**INTRODUCTION**

Defendants CaremarkPCS Health, L.L.C. and OptumRx, Inc. (collectively, the "PBM Defendants") ask the Court to consolidate this action with the Insulin Pricing MDL, which is premised on an "alleged *insulin* pricing scheme" between the PBM Defendants and three insulin manufacturers (Eli Lilly and Company, Sanofi Aventis U.S. LLC, and Novo Nordisk, Inc.) that are defendants in the Insulin Pricing MDL but not this action. *In re Insulin Pricing Litigation*, 2023 WL 5065090, at *1 (J.P.M.L. Aug. 3, 2023) (emphasis added). But that request would transform the Insulin Pricing MDL into an MDL involving *every* branded drug made by *every* manufacturer—all to accommodate a single additional action involving an entirely distinct factual core. Indeed, Hawai'i expressly states that its "claims are not limited to insulin" but rather are based on an alleged scheme that causes "increased prices and reduced access to brand-name prescription drugs" of all kinds—thousands of them, allegedly. First Am. Compl. ¶ 22, *State of Hawai'i ex rel. Anne E. Lopez v. CaremarkPCS Health, L.L.C. et al*, No. 23-cv-00464 (D. Haw.), ECF No. 1-2 ("FAC").

Consolidating this action with the Insulin Pricing MDL will not achieve any of the efficiencies intended by 28 U.S.C. § 1407(a). Hawai'i's action involves different products; different manufacturers; different diseases; different patient populations; different contractual relationships; different competitive dynamics in the marketplace; different lengths of time on the market; different risk/benefit profiles for physicians to consider; and countless other factual differences. At the same time, the Insulin Pricing MDL is already complex: it includes cases brought by dozens of plaintiffs organized across three separate tracks all pursuing claims relating to insulin. Given these differences, consolidating the cases would complicate an already complex MDL and would undermine the efficiencies that the MDL is supposed to serve, while simultaneously slowing the Hawai'i action's progress.

The principal basis for the PBMs' request is that Hawai'i's complaint involves factual allegations related to insulin.  But Hawai'i's complaint involves insulin only because it alleges that PBMs inflate the prices of *every* branded pharmaceutical drug in the country, only a small portion of which are insulins.  The Panel routinely denies consolidation of actions "shar[ing] some questions of fact," particularly where, as here, "the scope" of the actions are "substantially different" and one makes "far broader allegations."  *In re Testofen Mktg. & Sales Pracs. Litig.*, 96 F. Supp. 3d 1371, 1372 (J.P.M.L. 2015); *see In re Gap, Inc., COVID-19 Lease Payment Litig.*, 492 F. Supp. 3d 1345, 1346 (J.P.M.L. 2020) (denying transfer despite "some overlapping factual questions and discovery" because "the overlap appears to be limited and overshadowed by … many individual questions"); *In re Nat'l Rifle Ass'n Bus. Expenditures Litig.*, 521 F. Supp. 3d 1353, 1353-54 (J.P.M.L. 2021) (denying transfer despite "factual overlap among some of the actions" because one of the actions "concerns far broader allegations" than the others).  Accordingly, the Panel should deny the PBM Defendants' motion.

## BACKGROUND

**I.      THE HAWAI'I ACTION**

The State of Hawai'i filed this action in Hawai'i state court against the PBMs on October 4, 2023.  Hawai'i amended its complaint, and the PBMs removed the case to the U.S. District Court for the District of Hawai'i on November 17, 2023.  *See State of Hawai'i ex rel. Anne E. Lopez v. CaremarkPCS Health, L.L.C. et al.*, No. 23-cv-00464 (D. Haw.), ECF No. 1.

Hawai'i's complaint alleges that the PBMs' role in the healthcare marketplace creates systematic distortions in insurance benefit design and drug pricing that affect the entire market for *all* branded prescription medicines.  Hawai'i alleges that PBMs "exert[] … leverage against prescription drug manufacturers to demand higher rebates and fees," driving up list prices for these medicines.  FAC ¶¶ 15-16.  The FAC is explicit that "the State's claims are not limited to insulin

2

or other diabetes medications, but rather are based on" an alleged "larger unfair and deceptive scheme" that results in "increased prices and reduced access to brand-name prescription drugs" of all kinds.  *Id.* ¶ 22.  The FAC challenges conduct related to more than a thousand "[d]rugs used to treat" a variety of "chronic conditions—including insulin, antidepressants, antipsychotics, and antiarrhythmics," as well as medicines "used to treat Chronic Lymphocytic Leukemia," "rheumatoid arthritis," "oncology, HIV, and autoimmune disorders."  *Id.* ¶¶ 81, 91, 100-01, 128.  It alleges that "prescription drug prices" of all kinds "increased by 33%" from 2014 to 2020.  *Id.* ¶ 34.  While the FAC identifies several branded drugs—including insulin—as examples of this alleged trend, Hawai'i's complaint acknowledges that insulin is different:  thanks to insulin manufacturers' affordability programs, "insulin costs are [] starting to decrease," yet "PBMs have not provided this same type of broad relief for the high cost of drugs other than insulin."  *Id.* ¶ 38.  Unlike the Insulin Pricing MDL, no drug manufacturers are named as defendants.  No manufacturers are alleged to play a role in the alleged scheme, although dozens (at least) would likely be subjected to third-party discovery.

## II.   THE INSULIN PRICING MDL AND THE PBM DEFENDANTS' TRANSFER MOTION

In 2023, certain state attorneys general asked the JPML to create an MDL to oversee five actions alleging a "scheme" between "insulin manufacturers and pharmacy benefit managers" to "inflate the price of insulin."  *In re Insulin Pricing Litig.*, 2023 WL 5065090, at *1.  The moving states also supported centralization of eight tag-along actions filed by certain counties and municipalities.  *Id.*  The Panel granted their request, concluding that an "alleged conspiracy to fraudulently raise insulin prices is at the heart of all actions," and centralization "will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary."  *Id.* at *2-3.

3

The MDL actions bring claims against three insulin manufacturers (Eli Lilly, Novo Nordisk, and Sanofi-Aventis) and three PBMs (CVS Caremark, Express Scripts, and Optum Rx). Each action is premised on allegations that "the insulin manufacturers negotiate with and pay secret rebates to PBMs" to ensure their insulin medications are included on the PBMs' formularies; the manufacturers "arbitrarily raise the list prices for the products to cover these payments"; and, as a result, "the published list price of the drugs are fraudulent, in contrast to reflecting legitimate market forces" that should theoretically suppress the price of insulin, given it is allegedly a 100-year-old-drug subject to competition from therapeutically equivalent generic alternatives. *Id.* at 3; *e.g.,* Compl. ¶ 164, *Local 837 Health & Welfare Plan v. Eli Lilly & Co.*, No. 23-cv-20932 (D.N.J.), ECF No. 1 ("Local 837 Compl.").

MDL No. 3080 currently comprises three tracks. **First**, the Self-Funded Payer Track includes actions brought individually on behalf of self-funded payers, including local governments, unions, schools, and other organizations who pay for insulin medicines provided to members of their health plan with prescription drug coverage. **Second**, the State Attorney General Track includes actions brought on behalf of sovereign states. **Third**, the Third-Party Payer Class Track includes putative class actions brought on behalf of third-party payers who reimburse and manage patient health care expenses. Case Management Order #3, at 3-5, *In re Insulin Pricing Litig.*, No. 23-md-3080 (D.N.J. Dec. 6, 2023), ECF No. 34. In addition, the MDL is coordinating with a series of New Jersey insulin pricing actions that are more procedurally advanced than the actions formally included within the MDL. Those include the Indirect Purchaser Consumer Action, *In re Insulin Pricing Litig.*, No. 17-cv-00699; the MSP Action, *MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*, No. 18-cv-02211; the Minnesota Action, *Minnesota v. Sanofi-Aventis U.S. LLC*, No. 18-cv-14999; and the Direct Purchaser Consumer Action, *In re*

*Direct Purchaser Insulin Pricing Litig.*, No. 20-cv-03426. *Id.* at 6. Defense counsel is also working to coordinate discovery in the MDL with separate insulin pricing litigations currently pending in state and territorial courts in California and Puerto Rico, respectively.

After removing the Hawai'i action to federal court, Caremark filed a Notice of Potential Tag-Along Action, asking the Panel to transfer the case to MDL No. 3080—an MDL involving allegations of a "conspiracy to fraudulently raise *insulin* prices." *In re Insulin Pricing Litig.*, 2023 WL 5065090, at *2 (emphasis added). The Clerk of the Panel determined that Hawai'i's action "is not appropriate for inclusion in" MDL No. 3080. ECF 174. The PBMs nonetheless moved to transfer Hawai'i's action to *In re Insulin Pricing Litigation*, MDL No. 3080, currently pending before the Honorable Brian R. Martinotti of the United States District Court for the District of New Jersey.

## ARGUMENT

The Panel may transfer civil actions for consolidated proceedings if "necessary for the convenience of the parties and witnesses or to further the just and efficient conduct of this litigation." *In re Covidien Hernia Mesh Prods. Liab. Litig.*, 481 F. Supp. 3d 1348, 1348 (J.P.M.L. 2020); *see* 28 U.S.C. § 1407(a). But "centralization under Section 1407 should be the last solution after considered review of all other options." *In re Bank of Am. Fraudulent Acct. Litig.*, 2023 WL 8538726, at *2 (J.P.M.L. Dec. 6, 2023) (quoting *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011)). Accordingly, parties should attempt informal means of coordination "before resorting to Panel intervention." *In re Gap, Inc.*, 492 F. Supp. 3d at 1347.

The Clerk's judgment that Hawaii's action "is not appropriate for inclusion in this MDL" is correct. Including Hawaii's case would transform the scope of the existing Insulin Pricing MDL into an MDL about all branded medicines and (potentially) all of their manufacturers, significantly

expanding discovery, adding additional complexities to an already complex MDL, and slowing progress in all other cases. ECF No. 174. Any perceived benefits of consolidation would be better served by informal cooperation among the parties to that litigation.

## I.    TRANSFER OF HAWAI'I'S ACTION IS NEITHER WARRANTED NOR JUSTIFIED

Hawai'i's action arises from a different core of factual allegations than actions in the Insulin Pricing MDL, and Hawai'i's theory of liability materially differs from the Insulin Pricing MDL plaintiffs' theory. Consequently, transferring the State's action to the MDL would significantly broaden the MDL's scope, delaying discovery in both proceedings and slowing the progress of the MDL. This result is not warranted, especially to accommodate just one action.

### A.    Transferring Hawai'i's Action Would Significantly Broaden the MDL's Scope

Hawai'i's action arises from a significantly broader "factual core" than any action in the MDL. *See In re Insulin Pricing Litig.*, 2023 WL 5065090, at *2. Unlike the insulin pricing suits, Hawai'i alleges the PBMs engaged in a "***larger*** unfair and deceptive scheme" to inflate prices of ***all*** "brand-name prescription drugs," and its "claims are not limited to insulin or other diabetes medications." FAC ¶ 22 (emphasis added); *cf. In re Insulin Pricing Litig.*, 2023 WL 5065090, at *1 (consolidating actions alleging "artificial[] and fraudulent[] inflat[ion]" of the "price[s] of insulin and other diabetes medications"). Hawai'i's action contains allegations about more than a thousand brand-name medicines—manufactured by dozens of different drug manufacturers—that the PBMs exclude from their formularies, not just the handful of insulin medicines made by the three insulin manufacturers involved in the Insulin Pricing MDL. *Compare, e.g.*, Compl. ¶ 1, *Indiana/Kentucky/Ohio Regional Counsel of Carpenters Welfare Fund v. Eli Lilly & Co.*, No. 23-cv-22305 (D.N.J.), ECF No. 1 ("Welfare Fund Compl.") (listing ten "insulin medications at issue"), *with* FAC ¶ 81 (alleging "1,156 unique drug exclusions" in 2022). Indeed, the FAC

specifically discusses medicines that have nothing to do with insulin, including "EpiPen," "Humira," "antidepressants, antipsychotics, and antiarrhythmics," "Chronic Lymphocytic Leukemia," "rheumatoid arthritis," and medicines for "oncology, HIV, and autoimmune disorders." FAC ¶¶ 81, 91, 100-01, 104, 114, 128.

The sheer volume of medicines at issue in the FAC go beyond "asserti[ng] … additional facts" and instead substitute a different "factual core." *In re Insulin Pricing*, 2023 WL 5065090, at *2. In other words, the "scope" of the "actions … are substantially different," even if Hawai'i's allegations about **all** branded medicines necessarily include brand-name insulin. *See In re Testofen*, 96 F. Supp. 3d at 1372. Hawai'i's action should not be added to the Insulin Pricing MDL "barring an indication from the transferee court that the parameters of [the MDL] should be altered." *In re Nexium (Esomeprazole) Prods. Liab. Litig.*, 908 F. Supp. 2d 1362, 1364 (J.P.M.L. 2012). There is no such indication here.

A comparison between the insulin medicines at issue in the MDL and the broader set of medicines at issue in the FAC shows how inclusion of Hawai'i's case would change the "factual core" of the MDL. The actions in the existing Insulin Pricing MDL are all premised on allegations that insulin is 100 years old and lacks patent protection, *see, e.g.*, Compl. ¶ 249, *Rutledge v. Eli Lilly & Co.*, No. 22-cv-00549 (D. Ark.), ECF No. 1-5 ("Ark. Compl."); Compl. ¶ 240, *State of Illinois v. Eli Lilly & Co.*, No. 23-00170 (N.D. Ill.), ECF No. 1-6 ("Ill. Compl."); Pet. ¶ 217, *State of Kansas ex rel. Kobach v. Eli Lilly & Co.*, No. 23-cv-04002 (D. Kan.), ECF No. 1-7 ("Kan. Pet."), the three insulin manufacturers in the MDL actions purportedly "dominate" the market to produce insulin even though insulin is off-patent and subject to competition from therapeutically equivalent versions, Ark. Compl. ¶ 250; Ill. Compl. ¶ 241; Kan. Pet. ¶ 218, the insulin manufacturers allegedly increased insulin list prices "in lockstep," Ark. Compl. ¶ 279; Ill. Compl.

7

¶ 270; Kan. Pet. ¶ 248, and the insulin manufacturers purportedly increased insulin list prices to pay rebates to the PBMs in exchange for preferred formulary placement over competitors' therapeutically equivalent products, Ark. Compl. ¶ 354, Ill. Compl. ¶ 344; Kan. Pet. ¶ 321. Based on these allegations, the current MDL actions allege that the list price of these insulins should be lower, but the insulin manufacturers "artificially inflate[]" the list price. *E.g.*, Ark. Compl. ¶¶ 54, 66, 80; Ill. Compl. ¶¶ 49, 62, 73; Kan. Pet. ¶¶ 51, 64, 77. While these allegations against the insulin manufacturers are flawed many times over, they are in every way tailored exclusively to insulin.

By contrast, Hawai'i alleges that the PBMs (but not the Manufacturers) favor higher list price medicines for all branded medicines, no matter their age, patent status, number of manufacturers, generic competitors, or pricing history. *See, e.g.*, FAC ¶¶ 7-8 ("PBMs … evolved business practices designed to maximize their own profits while essentially forcing manufacturers to raise prices for brand-name prescription drugs."); *id.* ¶ 91 ("[I]n 2020, Express Scripts excluded AstraZeneca's Calquence (drug used to treat Chronic Lymphocytic Leukemia) ***in favor of the higher-priced*** Imbruvica (manufactured by AbbVie and Johnson & Johnson)—perhaps the first major PBM restriction of an oncology therapy." (emphasis added)); *id.* ¶ 103 ("PBMs indirectly control list prices by negotiating drug rebates so high that manufacturers must raise WAC to protect their revenue and profit margins."). In other words, the factual core underlying the Hawai'i action—and the conclusions Hawai'i draws from that different, far broader core—differ materially from the factual core and theory of liability that the MDL plaintiffs pursue. Hawai'i alleges the PBMs' corruption of the ***entire branded pharmaceutical industry*** for their own benefit. By contrast, the MDL plaintiffs allege illicit pricing activity in the market for one specific type of product, based on its allegedly unique circumstances.

The PBMs try to overcome these differences by highlighting the FAC's insulin-related allegations, *see* Mot. at 10-17, but the Panel has recognized that a few overlapping factual issues do not warrant consolidation under § 1407—particularly where, as here, introducing a new action to the MDL would substantially broaden the scope of an already complex MDL. For example, in *In re Testofen*, the Panel refused to consolidate two actions when one action alleged "a broad scheme to defraud consumers that encompasse[d] 22 products and 17 defendants," while the other involved just "three products in a single product line … manufactured by one defendant." 96 F. Supp. 3d at 1372; *see also In re Gap, Inc.*, 492 F. Supp. 3d at 1346 (denying transfer where the "actions will involve some overlapping factual questions and discovery," but "the overlap appears to be limited and overshadowed by … individual questions … relating to the unique properties, leases, and negotiating parties at issue"); *In re Nat'l Rifle Ass'n*, 521 F. Supp. 3d at 1353-54 (denying transfer despite "factual overlap among some of the actions" because one of the actions "concerns far broader allegations" than the others). The cases the PBMs cite are consistent with this approach. In *In re Nexium*, the Panel merely consolidated claims about the same drug, where one action involved **one** additional drug and **one** additional defendant. 908 F. Supp. 2d at 1363-64. And in *In re Generic Digoxin & Doxycycline Antitrust Litigation*, the Panel transferred actions bringing claims concerning six generic drugs that all "stem[med] from **the same government investigation** into … anticompetitive conduct in the generic pharmaceuticals industry." 222 F. Supp. 3d 1341, 1343-44 (J.P.M.L. 2017) (emphasis added). Neither case justifies adding "***1,156***" "brand-name prescription drugs" to an Insulin Pricing MDL focused on a small number of insulin medicines. FAC ¶¶ 22, 81 (emphasis added).

The PBMs also contend that consolidation is warranted because some of the complaints in the existing MDL actions make stray references to a few ***noninsulin*** diabetes medications made

by the same manufacturers who are already parties to those lawsuits. But other MDL actions do not mention these medicines. *See, e.g.*, Welfare Fund Compl. ¶ 1 ("The insulin medications at issue in this Complaint are Humalog, Basaglar, Fiasp, Novolog, Levemir, Tesiba, Apidra, Lantus, and Toujeo."); Local 837 Compl. ¶ 1 (same); Compl. ¶ 1, *Sheet Metal Workers Local No. 25 Health & Welfare Fund v. Eli Lilly & Co.*, No. 23-cv-14371 (D.N.J.), ECF No. 1 (same). And these entirely distinct medicines have no relevance or connection at all to the MDL plaintiffs' claims challenging insulin pricing (notwithstanding the passing references in a few complaints). This disconnect will likely be addressed by the transferee court soon.

Finally, any "emphasis" on insulin in the FAC is a product of the information available to Hawai'i so far, not a reflection of the intended focus of the lawsuit. *See* Mot. at 18. As the FAC explains, "CVS Caremark and OptumRX only produced data relating to insulin products and Express Scripts produced data relating to insulin products and one noninsulin product" during the State's investigation, and "internal data for CVS Caremark" used "insulin as a case study" to illustrate drug-pricing activity. FAC ¶ 18. The lawsuit expressly uses insulin as an "example" of the "larger" pattern Hawai'i alleges, confirming its allegations sweep far more broadly. *Id.* ¶¶ 22, 38. The cases in the Insulin Pricing MDL allege no such larger pattern (indeed, such a pattern is contrary to the MDL plaintiffs' allegations that the pricing dynamics related to insulin are somehow unique), and Hawai'i's action accordingly does not belong with them.

    **B.**    **Consolidation Would Exacerbate, Not Eliminate, Inefficiencies**

Because of these differences, consolidating Hawai'i's broader action into the Insulin Pricing MDL would hamper both actions and jeopardize the efficiency of the MDL. *See In re Insulin Pricing Litig.*, 2023 WL 5065090, at *1. Consolidation is intended to avoid "duplicative discovery, eliminate the possibility of conflicting rulings on the scope of discovery and other pretrial matters, and create some efficiencies for the parties and the judiciary." *In re Covidien*,

10

481 F. Supp. 3d at 1348; *see* 28 U.S.C. § 1407(a). By contrast, consolidating Hawai'i's action would expand discovery to cover all "brand-name prescription drugs" and their manufacturers—well beyond the three manufacturers currently in the Insulin Pricing MDL. FAC ¶ 22. The vast majority of brand-name medicines involve different diseases, different patient populations, and different contractual relationships than insulin. If all brand-name prescription medicines are added to the Insulin Pricing MDL, every brand-name drug manufacturer—potentially hundreds—in the United States would conceivably be a third-party discovery target, if not added as defendants to these cases. Including Hawai'i's action in the Insulin Pricing MDL would vastly expand the scope of discovery in the MDL, which has already made significant progress since the first insulin pricing suits were filed in 2017.

Moreover, the Insulin Pricing MDL is already complex. Expanding it as the PBM Defendants request would introduce "many individual questions" that "overshadow[]" any factual issues related to the pricing of insulin, and it would risk unduly delaying discovery in the existing actions so Hawai'i's much broader action can keep pace. *In re Gap, Inc.*, 492 F. Supp. 3d at 1346; *see also In re Covidien*, 481 F. Supp. 3d at 1348 (denying transfer despite "[t]he actions['] share[d] allegations" because "the benefits of centralization" would not "outweigh the disruption to the pending actions"). And "centralization would be disruptive to the efficient conduct of each action with little overall benefit." *In re Student-Athlete Name & Likeness Litig.*, 763 F. Supp. 2d 1379, 1380 (J.P.M.L. 2011).

Consolidation is particularly inappropriate where, as here, it would significantly disrupt many suits just to accommodate one action. The manufacturers are aware of no other action making broad allegations about the alleged "larger and unfair deceptive scheme" relating to "increased prices and reduced access to brand-name prescription drugs" of any kind. FAC ¶ 22.

11

In any event, the possibility of future actions raising similarly broad allegations is not a proper consideration in deciding this transfer motion. *See In re Gap, Inc.*, 492 F. Supp. 3d at 1347 ("[T]he Panel 'is disinclined to take into account the mere possibility of future filings in [its] centralization calculus.'" (citation omitted)); *In re Cal. Wine Inorganic Arsenic Levels Prods. Liab. Litig.*, 109 F. Supp. 3d 1362, 1363 (J.P.M.L. 2015) ("[T]he mere possibility of additional actions does not convince us that centralization is warranted."). The Panel should not impede discovery in the dozens of cases currently in the insulin MDL.

## II.　ANY BENEFITS OF CONSOLIDATION COULD BE SERVED BY INFORMAL COORDINATION

Given that Hawai'i's action is the ***only*** case currently raising such broad claims against the PBMs, it is far more appropriate for Hawai'i's action to informally coordinate with the other cases in Insulin Pricing MDL, to the extent necessary. Centralization "should be the last solution after considered review of all other options," *In re Gap, Inc.*, 492 F. Supp. 3d at 1347 (quoting *In re Gerber Probiotic Prods. Mktg. & Sales Litig.*, 899 F. Supp. 2d 1378, 1379 (J.P.M.L. 2012)), including informal "cooperation and coordination among the parties and the involved courts," *In re Nat'l Grid Tax Gross-Up Adder Litig.*, 2023 WL 2876091, at *1 (J.P.M.L. Apr. 10, 2023). "[I]nformal cooperation among counsel and coordination among the involved courts are, in [the Panel's] judgment, preferable to formal centralization" where "a limited number of plaintiffs' [and defense] counsel … already are working together," *In re Cal. Wine*, 109 F. Supp. 3d at 1363; *see also In re Covidien*, 481 F. Supp. 3d at 1349; *In re Testofen*, 96 F. Supp. 3d at 1372; *In re Uber Techs., Inc., Wage & Hour Emp. Pracs. Litig.*, 254 F. Supp. 3d 1376, 1378 (J.P.M.L. 2017).

Here, cooperation would be straightforward due to the overlapping counsel in the actions. The PBMs are represented by the same national counsel as they are in the MDL, and Hawai'i's outside counsel—Motley Rice—is already representing the Government of Puerto Rico in

connection with insulin-pricing litigation against the PBMs and the Manufacturers in Puerto Rico territorial court.  *See* Compl. at 41, *Gov't of Puerto Rico v. Eli Lilly & Co.*, Case No. SJ2023CV00319 (P.R.C.F.I.), ECF No. 43-3, Ex. A.  The MDL parties could informally cooperate by, for example, sharing overlapping discovery related to brand-name insulin products with the Hawai'i action.  This would "be sufficient to prevent duplicative discovery" and inconsistent rulings without impeding either action's discovery progress or transforming the current MDL, as consolidation would.  *In re Testofen*, 96 F. Supp. 3d at 1372; *see In re Covidien*, 481 F. Supp. 3d at 1349.  The PBMs offer no evidence suggesting that the State's counsel would refuse to cooperate if cooperation is expressly contemplated by the Panel's order.  *Cf.* Mot. at 22.

The availability of informal coordination distinguishes the circumstances here from other Panel decisions that the PBMs cite.  For example, in *In re Auto Body Shop Antitrust Litigation*, the Panel reasonably determined that the presence of "over 80 insurers named as defendants" rendered involuntary cooperation "impracticable."  37 F. Supp. 3d 1388, 1389-90 (J.P.M.L. 2014).  Similarly, in *In re Generic Digoxin*, the Panel eschewed informal cooperation "among the involved parties" because there were "more than seventy actions" involving at least twenty-nine defendants.  222 F. Supp. 3d at 1343.  Here, by contrast, coordinating Hawai'i's action with the existing MDL is feasible because there are "effectively only [two] actions pending," each with common defendants and substantially overlapping counsel.  *In re Student-Athlete Name & Likeness Litig.*, 763 F. Supp. 2d at 1380.

There is nothing stopping the parties in the Hawai'i action from informally cooperating to minimize the risk of duplicative discovery in the Insulin Pricing MDL.  Because consolidation is the "last solution after considered review of all other options," it is not warranted here for this independent reason, too.  *In re Best Buy*, 804 F. Supp. 2d at 1378.

13

**CONCLUSION**

The Panel should deny the PBM Defendants' motion to transfer this action to MDL No. 3080.

Dated: January 29, 2024

Respectfully submitted,

/s/ Diana M. Watral

Diana M. Watral, P.C.
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
T: (312) 862-2000
diana.watral@kirkland.com

*Attorney for Eli Lilly and Company*

/s/ William D. Coglianese

William D. Coglianese
**JONES DAY**
51 Louisiana Avenue, NW
Washington, DC 20001
T: (202) 879-3710
wcoglianese@jonesday.com

*Attorney for Sanofi-Aventis U.S. LLC*

/s/ Neal A. Potischman

Neal A. Potischman
**DAVIS POLK & WARDWELL, LLP**
1600 El Camino Real
Menlo Park, CA 94025
T: (650) 752-2000
neal.potischman@davispolk.com

*Attorney for Novo Nordisk Inc.*